576 P.2d 1052

Dean A. SCHWARTZMILLER,
Petitioner-Appellant,

v.

Earl WINTERS, Sheriff of Elmore
County Jail, Respondent.

The STATE of Idaho,
Plaintiff-Respondent,

v.

Dean A. SCHWARTZMILLER, aka
Timothy Lewis, aka Tim Lewis,
Defendant-Appellant.

Nos. 12237, 12324.

Supreme Court of Idaho.

March 10, 1978.

Rehearing Denied April 25, 1978.

James L. Kevan of Hicks & Kevan, Mountain Home, for appellant.

Wayne L. Kidwell, Atty. Gen., David G. High, Asst. Atty. Gen., Boise, for respondents.

SHEPARD, Chief Justice.

■ This is an appeal from a conviction for lewd and lascivious conduct with a minor child. I.C. § 18–6607. Defendant-appellant was found guilty of having engaged in sexual contact with a minor male and was sentenced to eight years in the penitentiary. We reverse and remand the case for a new trial.[1]

A prosecutor's information charged appellant with lewd and lascivious conduct. A preliminary hearing was held. At this hearing the alleged victim testified that the appellant had bound him with rope, tore off the victim's clothing and intentionally and against the will of the victim, engaged in sexual conduct with the victim. Consent is not, however, a defense to a prosecution for this crime. The investigating police officer, the examining physician and a youthful companion of the alleged victim also testified at the preliminary hearing. Probable cause was found and the appellant was bound over for trial in the district court.

Approximately three days before the scheduled trial date the investigating officer became suspicious of the alleged victim's story. He had a conversation with the alleged victim and accompanied him from Mountain Home to Boise where a polygraph test was administered. The alleged victim recanted his story to the extent that he no longer claimed to have been bound by rope by the defendant and that he, the alleged victim, now claimed he had voluntarily engaged in sexual contact with the defendant. The prosecuting attorney obtained actual knowledge of these events no later than the night before the trial began but did not notify either the trial judge or defense counsel.

Appellant and his defense counsel first became aware of the change in testimony by the State's key witness during the State's direct examination of the victim. Even then the prosecuting attorney did not bring out the fact that the alleged victim had been administered a polygraph test. Appellant's counsel learned of the polygraph test when this fact was volunteered by the witness to bolster his current story. The alleged victim claimed he had committed perjury at the preliminary hearing in order to avoid being thought of as a homosexual. To further bolster his innocent image at the preliminary hearing, the alleged victim admitted to suborning the perjury of his youthful companion at the preliminary hearing.

■ While the due process clauses of the Idaho Constitution, art. 1, § 13, and of the fourteenth amendment to the U.S. Constitution do not guarantee errorless trials, *Donnelly v. DeCristoforo,* .416 U.S. 637, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974), they do at least ensure that criminal trials shall be fundamentally fair. In this respect, both this Court and the U.S. Supreme Court have reversed convictions when important evidence had been either suppressed or withheld by the prosecution. *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); *State v. Harwood,* 94 Idaho 615, 495 P.2d 160 (1972). *See generally United States v. Agurs,* 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976). Most typically this problem arises when the defendant learns of exculpatory evidence after a verdict has already been rendered. The basic reason for reversing a conviction in such cases, when it is necessary to do so, is because the prosecution's failure to dis-

1. At oral argument we were advised that appellant was scheduled for parole release. Since parole may be revoked, I.C. § 20–229, and creates at best a "conditional liberty" interest, *Morrissey v. Brewer,* 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), and because of the collateral consequences of a felony conviction, *e. g.,* Idaho Const., art. 6, § 3; I.C. § 32–603(6), the fact that appellant may have been released on parole before this opinion issued does not moot the case. *Pennsylvania v. Mimms,* 434 U.S. 106, 98 S.Ct. 330, 332 n. 3, 54 L.Ed.2d 331 (1977).

close evidence deprived the defense of an opportunity to have a fair hearing on the questions of guilt and punishment. We see no reason why the same rule should not apply when the failure of the State is discovered during trial. Certainly it cannot be denied that failure to disclose perjury and suborning of perjury by the key witness (and only eyewitness) during the preliminary hearing prejudiced severely defendant's ability to prepare for and obtain a fair hearing on the issue of guilt or innocence.

■ The State contends here that the trial court's discovery order directed that discovery be completed long before the State learned its key witness had changed his testimony. We note, however, that the discovery order had a standard provision for continuing discovery which would suggest the prosecution had an ongoing duty as new facts came to its attention. Even assuming, however, the trial court's order was no longer in effect, Rule 16(d) of the I.C.R. provides:

"(d) CONTINUING DUTY TO DISCLOSE. *If, subsequent to compliance with an order issued pursuant to this rule, and prior to or during trial, a party discovers additional evidence* or the evidence of an additional witness or witnesses, *or decides to use additional evidence,* witness or witnesses, *such evidence is or may be subject to discovery and inspection under such prior order, he shall promptly notify the other party or his attorney and the court* of the existence of additional evidence or the names of such additional witness or witnesses *to allow the court to modify its previous order or to allow the other party to make an appropriate motion for additional discovery or inspection.*" (Emphasis added.)

This rule imposes a duty of continuing discovery "prior to and during trial." *See also* DR 7-103(B) of Code of Professional Responsibility. We therefore find no basis for the prosecution's contention that it had no duty to disclose the new information to the defense.

■ In *Giglio v. United States,* 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972), the U.S. Supreme Court said that, "When the 'reliability of a given witness may well be determinative of guilt or innocence,' nondisclosure of evidence affecting credibility falls within this general rule." *Id.* at 154, 92 S.Ct. at 766. The Court added:

"Here the Government's case depended almost entirely on Taliento's testimony; without it there could have been no indictment and no evidence to carry the case to the jury. Taliento's credibility as a witness was therefore an important issue in the case * * *." *Id.* at 154–55, 92 S.Ct. at 766.

The situation here is nearly the same. There were no witnesses to the alleged crime other than the alleged victim. The examining physician's testimony was, in our opinion, equivocal and depended on statements made to him by the alleged victim. The examining officer and the alleged victim's mother knew no more of the crime than was told to them by the alleged victim. The testimony of the alleged victim's companion shares the same weakness, accentuated by that witness' perjury at the preliminary hearing in this case, as well as his admission of having committed perjury in other unrelated cases. The credibility of the alleged victim from the preliminary hearing through the trial was the determining factor in the innocence or guilt of the accused. The fact that the alleged victim had committed perjury and had suborned the commission of perjury might tend to negate the guilt of the accused by increasing the likelihood that the alleged victim's entire charge was a fabrication. In addition, the fact that the alleged victim no longer claimed to have been an involuntary victim raised an issue going to the gravity of the punishment. *Brady v. Maryland,* 373 U.S. at 87–88, 83 S.Ct. 1194. *See also* ABA Standards Relating to Discovery and Procedure Before Trial § 2.1(c) (Approved Draft 1970). In withholding evidence from the defense bearing on these issues until after the trial had begun, the prosecution denied the appellant the right to a fair trial by depriving him of adequate time in which to prepare a defense based on the lack of

veracity on the part of the State's key witness.

In view of our disposition of the case, it is unnecessary to consider the other issues raised by the appellant.

Reversed and remanded.

McFADDEN, DONALDSON, BAKES and BISTLINE, JJ., concur.