671 P.2d 1051

**STATE of Idaho, Plaintiff-Respondent,**

v.

**John Wesley HODGES, Defendant-Appellant.**

No. 14203.

Supreme Court of Idaho.

Oct. 19, 1983.

George G. Hicks, Mountain Home, for defendant-appellant.

Jim Jones, Atty. Gen., Lynn E. Thomas, Sol. Gen., Boise, for plaintiff-respondent.

HUNTLEY, Justice.

Appellant was arrested and charged with possession of a controlled substance after police officers discovered a leather "kit" in his jacket pocket. The kit contained drug paraphernalia and a small bottle of white powder which later proved to be cocaine. Appellant's jacket was searched as part of a general search of his motel room. A warrant for that search was issued on the strength of the following circumstances: (1) appellant had given six or eight pills which he referred to as "robin's eggs" (street slang for a type of amphetamine) to an all-night convenience store clerk; (2) appellant told the clerk he had sixteen thousand more of the pills where those came

from; (3) the store clerk notified the police, who ran a lab test on the pills which was "inconclusive"; (4) a field test was later run, yielding a "positive" result for the presence of amphetamine.

The magistrate judge determined there was probable cause and issued a search warrant. Police then searched appellant's motel room and obtained a box full of pills similar to those given to the store clerk, and the kit referred to above. . Laboratory tests later indicated that the pills contained no amphetamine substance; however, the powder was cocaine.

■ Appellant contends that, given the failure of the first test to indicate the presence of amphetamine in the pills he gave the store clerk, there was not sufficient probable cause for a warrant to issue. Appellant's motion to suppress the evidence obtained incident to the warrant was denied by the district court. The district court relied in part on *State v. Oropeza,* 97 Idaho 387, 545 P.2d 475 (1976), wherein this court stated that the "issuing magistrate's determination 'of probable cause should be paid great deference by reviewing courts . . . .' " *Id.* at 391, 545 P.2d at 479. The police officers' affidavit in the present case contained sufficient information from which the magistrate could make a determination of probable cause. Certainly it was not necessary that the search warrant affidavit indicate conclusive test results as to the presence of a controlled substance before probable cause could exist. Although, as appellant contends, the results of the two tests run on the pills were contradictory, there were sufficient other factors present for the magistrate to determine that the individual described in the affidavit probably possessed a controlled substance in violation of the law. The pills given to the store clerk were described as amphetamines; they were taken from a plastic bag; appellant stated he had sixteen thousand more of them, which he had obtained from the airport. We find no error in the district court's ruling that the "affidavit to support the search warrant provided sufficient facts to support a finding of probable cause that

controlled substances would be within the motel room and the vehicle which the warrant authorized to be searched."

Appellant also contends that the warrant was invalid as being based on erroneous information, or on willful misrepresentation of information. We find in the record absolutely no basis for the suggestion that the police officers deliberately misrepresented information in their affidavit. To the contrary, they included both tests in their oral affidavit, and indicated the first test did not test positive for amphetamine. Moreover, there was testimony at trial tending to prove that the pill contained a substance (ephedrine sulphate) which causes a reaction somewhat similar to amphetamine in the type of field test used by the officers, although generally requiring a longer reaction time. The most that could legitimately be claimed with regard to the field test in question is that the officer misinterpreted the results. In *State v. Lindner,* 100 Idaho 37, 592 P.2d 852 (1979), we held that "negligent or innocent misrepresentations, even if necessary to establish probable cause, will not invalidate a warrant." *Id.* at 41, 592 P.2d at 856.

Finally, appellant alleges error in the trial court's failure to grant a mistrial after the prosecution referred to appellant's silence. Appellant points to two separate incidents of impermissible reference to his silence. The first occurred after the prosecution asked a witness whether the defendant had made any statements at the time of the search. The witness mentioned one statement, and the defense objected to its admission because it was not contained in discovery obtained from the state. The judge then retired the jury and the admissibility of the statement was discussed, with the prosecution making the following comment:

"Secondly, the statement that the officer presented to the jury, we are not introducing it for the purpose of in essence incriminating the defendant. Where I'm coming from on this particular line of questioning is basically to the effect that when he discovered this vial

containing the white substance, and the kit, that the defendant observed him take that out and . . . he stated nothing to him at that time. He didn't deny he owned it. He did not deny that he was unaware [sic] of it . . . if I had been allowed to go on further, we would have established that he remained silent after that point in time. And I think that's relevant. I think it's admissible. And that's where we are going on this particular line of questioning."

The defense then pointed out that the prosecution was attempting to make of the defendant's silence a tacit admission of guilt. The court agreed and instructed the prosecution that such testimony would not be admissible.

After the jury returned and trial resumed, and during direct examination of another witness, the prosecution brought up the matter of silence:

"Q. During the course of this investigation at the motel room, did the defendant remain silent?

A. All except for one statement.

Q. Well, all right. That statement we can't go into.

A. Okay.

Q. But other than that, did he remain silent?

A. Yes, he did.

MR. HICKS: Object, Your Honor, and move that that be stricken from the record.

THE COURT: Yes. Sustained. The jury will disregard that question and answer and strike it from your minds."

The court recessed, and defense counsel moved for a mistrial. After consideration, the court denied the motion.

The second alleged reference to defendant's silence occurred in the prosecution's closing argument:

"I note in the defendant's arguments that basically they are saying he's not guilty because this wasn't cocaine. Pam Server has been qualified in numerous court trials to testify. She's a qualified expert. Ladies and gentlemen, it was cocaine, and you know it if you construe this evidence with any reasonableness at all. Even a higher standard, I mean, when you use the word 'reasonable' to a standard almost up to what we talked about, beyond all doubt, *her testimony is uncontradicted.*" (Emphasis added.)

Defense counsel objected, arguing that the prosecution's remark was "a blatant reference to the fact that [the defendant] didn't take the stand." The court sustained the objection and when the jury was called back, instructed them to disregard the remark. The defense's renewed motion for a mistrial was denied.

■ It is clearly erroneous for a prosecutor to introduce evidence of the defendant's postarrest silence for the purpose of raising an inference of guilt.[1] *State v. White,* 97 Idaho 708, 551 P.2d 1344, *cert. denied,* 429 U.S. 842, 97 S.Ct. 118, 50 L.Ed.2d 111 (1976); *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). It is likewise erroneous for a prosecutor to comment to the jury on the defendant's failure to testify at trial. *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); *Griffin v. California,* 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965).

■ Turning first to the prosecutor's remark that state witness Server's testimony was "uncontradicted," we hold that it does not constitute an impermissible reference to the defendant's failure to testify. Rather it is a comment on the weight of the evidence produced: the state presented expert testimony by one who had chemically tested the substance found in defendant's possession and determined it to be cocaine; the defense, on the other hand, presented no evidence—by means of expert testimony or otherwise—tending to contradict the state's suggested conclusion that the substance was cocaine. There was no implica-

---

1. The rule would also apply to pre-arrest silence where there is "custodial interrogation," *Miranda v. Arizona,* 384 U.S. 436, 467–468, 86 S.Ct. 1602, 1624–1625, 16 L.Ed.2d 694, or where, as here, the defendant was informed of his right to remain silent.

**592**

tion that defendant himself had some obligation to take the witness stand (and was admitting guilt by not doing so). As stated by the California Supreme Court,

"*Griffin [supra]* forbids either direct or indirect comment upon the failure of the defendant to take the witness stand. The rule, however, does not extend to comments on the state of the evidence or on the failure of the defense to introduce material evidence or to call logical witnesses." *People v. Jackson,* 28 Cal.3d 264, 168 Cal.Rptr. 603, 623, 618 P.2d 149, 169 (1980), *cert. denied,* 450 U.S. 1035, 101 S.Ct. 1750, 68 L.Ed.2d 232 (1981).

■ We turn now to the more difficult matter of the prosecutor's reference to defendant's silence at the time of his arrest. By his own admission the prosecutor was attempting to establish part of the state's case (and the defendant's guilt) by drawing inferences from the defendant's silence.[2] The record shows that at the time referred to by the prosecutor the defendant had already been informed of his constitutional right to remain silent. The defendant's de-

cision to exercise that right cannot later be made the basis for inferring any admission of guilt. *State v. White, supra.* However, prosecutorial reference to defendant's silence does not constitute *per se* reversible error. *Chapman v. California, supra.* The court will look to see whether such error was "harmless."

■ In *State v. LePage,* 102 Idaho 387, 630 P.2d 674, *cert. denied,* 454 U.S. 1057, 102 S.Ct. 606, 70 L.Ed.2d 595 (1981), this court set out the test to be applied where inadmissible evidence was put before the jury. The error alleged is harmless if the appellate court is "convinced beyond a reasonable doubt that the same result would have been reached had the evidence been properly excluded." *Id.* at 396, 630 P.2d at 383. *See also, State v. Hoisington,* 104 Idaho 153, 657 P.2d 17 (1983) (admission of tainted evidence will be held to be harmless error where admissible evidence provides beyond a reasonable doubt " 'overwhelming and conclusive proof of a defendant's guilt' "); *State v. LaMere,* 103 Idaho 839, 655 P.2d 46 (1982); *State v. Garcia,* 100 Idaho 108, 594

---

**2.** We have in this case a rather serious breach of acceptable conduct on the part of the prosecutor. It is evident from counsel's colloquy with the court that the prosecutor was instructed not to proceed with his line of questioning on the defendant's failure to speak during the search of his motel room:

"MR. McLAUGHLIN: Well, before the jury comes back in, Your Honor, I was going to ask the witness whether or not there was any statements made by the defendant regarding the kit or whatever you want to call it, and essentially he would be testifying that, no, there were no such—nothing was stated to him by the defendant in that regard. Are you going to allow us to do that? I guess that's my question.
THE COURT: Well, there isn't any objection to that.
MR. McLAUGHLIN: All right.
MR. FRACHISEUR: Your Honor, the objection would be that they are trying to make silence an admission. I don't think that's proper. The defendant was obligated—has no obligation to say anything to the police at any time. That's a violation of his Fifth Amendment rights to make silence an admission of guilt.
THE COURT: I think that's correct. All right, then. I would not permit that, Mr. McLaughlin.

MR. McLAUGHLIN: Very well, Your Honor."

In spite of the court's instruction, however, counsel for the prosecution proceeded to introduce that line of questioning with the state's next witness ("During the course of this investigation at the motel room, did the defendant remain silent?"). Aside from the potential harm done by the reference to silence itself ("If a prosecutor is allowed to introduce evidence of silence, for any purpose, then the right to remain silent guaranteed in *Miranda v. Arizona* ... becomes so diluted as to be rendered worthless ...." *State v. White, supra,* [97 Idaho] at 714–715, 551 P.2d at 1350–1351), the prosecutor did so with knowledge of the court's ruling that such evidence would be inadmissible. That is troubling. We take note of a disciplinary rule from the Code of Professional Responsibility (1971) which may have application here:

"C. In appearing in his professional capacity before a tribunal, a lawyer shall not: 1. State or allude to any matter that he has no reasonable basis to believe is relevant to the case or that will not be supported by admissible evidence." DR 7–106.

Subsection A of the same rule prohibits a lawyer from disregarding "a ruling of the tribunal made in the course of a proceeding."

P.2d 146 (1979); *State v. Smoot,* 99 Idaho 855, 590 P.2d 1001 (1978).

In the present case, exclusion of the tainted evidence, that is, the reference to the defendant's silence at the time of the search, would still leave a substantial body of evidence establishing his illegal possession of a controlled substance. The prosecutor was attempting to show defendant's acknowledgement of his possession of the kit when defendant said nothing after being "confronted" with the cocaine taken from his jacket pocket. His ownership of the jacket was not contested, nor did he deny knowledge of the presence of the "kit" in his pocket. Even if he had, his wallet and his identification were in the jacket pocket, a fact pointed out by the district court (which noted when it denied the motion for a mistrial that other evidence establishing guilt was "pretty overwhelming"). Moreover, the district court handled the matter of the evidence of defendant's silence in such a way as to make consideration of that evidence by the jury very unlikely. Defense counsel was not required to state the basis for his objection in the presence of the jury, and all discussion of the silence issue was conducted out of the jury's presence. The statement regarding the defendant's silence was stricken from the record, and the jury instructed to disregard it. The court's remarks were made so as not to draw additional attention to the inadmissible evidence, and no mention was made of it thereafter.

We accordingly conclude that, on the record before us, the evidence of defendant's silence was harmless error, there being conclusive proof of the defendant's guilt established through admissible evidence.[3]

The judgment of conviction and sentence are affirmed.

DONALDSON, C.J., and SHEPARD, J., concur.

BAKES, J., concurs in the result.

BISTLINE, Justice, concurring in part and dissenting in part.

Although the Court's opinion in general correctly portrays the issues and the underlying facts, I am unable to subscribe to the view that contaminating a jury trial by exhibiting the accused's silence is in the same category as error in admitting evidence. Inadmissible evidence was the problem which we considered in *State v. LePage,* 102 Idaho 387, 630 P.2d 674 (1981). Evidence may be inadmissible for any number of reasons, some of which are not based on constitutional grounds. In *State v. LaMere,* 103 Idaho 839, 655 P.2d 46 (1982), the Court there, too, failed to draw a distinction between improper prosecutorial comment in final summation and improperly admitted evidence. In that case I pointed out, on this narrow issue, that the Court's opinion watered down the inflammatory rhetoric indulged in by the prosecution to an insipid statement "that the defendant 'took her virginity away from her.'" 103 Idaho at 844, 655 P.2d 46. On page 867, 655 P.2d 46, in dissent, I exposed to public view "the last words the jury would hear before retiring to deliberate:"

> "'It was his hair in her pants, in the car. Corroboration may tend to establish the crime and make it probable. The fact that those hairs can't be identified as certain as a fingerprint doesn't destroy the corroboration, corroborating ability of those hairs in her pants that belonged to Mr. LaMere.
>
> "'*Look at him. You have to find him guilty.* You have to be the judges here. And I submit to you, Ladies and Gentlemen, that the evidence in this case is

---

**3.** It should be noted that the test for harmless error where there has been prosecutorial misconduct is the same as that enunciated in *LePage, supra,* for tainted evidence. *State v. LaMere, supra. State v. Griffiths,* 101 Idaho 163, 610 P.2d 522 (1980). In *Griffiths,* decided before *LePage,* the court held that to constitute reversible error "the misconduct must be shown to have materially contributed to the verdict of the jury." 101 Idaho at 167, 610 P.2d at 526. However, the "materially contributed" language was discredited in *LePage.* 102 Idaho at 396, 630 P.2d at 680.

beyond reasonable doubt and is sufficient for you to find him guilty.

"'He took that little girl out there in that dark alley and wallowed around in the filth of that car and took her virginity away from her. And during the whole thing he said it was better in prison. It makes me sick.

"'Justice needs to be done here. And in the interest of justice, I submit to you folks that Mr. LaMere has been proven—a sufficient amount of proof—guilty of the crime of rape. Thank you.'" 103 Idaho at 867, 655 P.2d at 74.

The Court's opinion passed off these grossly improper theatrical remarks "as the equivalent of improperly admitted evidence—from which it is said to follow that if such is excised, and the Court can say beyond a reasonable doubt that a conviction would have been reached without it, the error is harmless." 103 Idaho at 868, 655 P.2d at 75 (Bistline, J., dissenting). As I said then, and say now, and will repeat as often as the need arises:

"The fallacy in this rationale is the total failure to comprehend the vast difference between, on the one hand, evidence improperly admitted and, on the other hand, inflammatory comments used to turn on the passion and bring out the prejudice. Obviously as everyone connected with the case knew, and as the prosecutor had insisted with his in limine motion, the girl's previous sexual history had nothing whatever to do with the charge against the defendant predicated on the immutable fact that the girl's age was only 14 years. The Court engages in an untenable exercise in its resolution of the issue by treating the improper comment as evidence."
103 Idaho at 868, 655 P.2d at 75.

The tragedy of the Court's LaMere opinion lies in its basing its affirmance based on LePage, whereas Solicitor-General Thomas correctly pointed to the standard of assessing error set out in State v. Garcia, 100 Idaho 108, 594 P.2d 146 (1979), which was, as also was LaMere, a prosecutorial misconduct case. As I said in LaMere, we applied our Garcia opinion three weeks after its issuance in State v. Stewart, 100 Idaho 185, 595 P.2d 719 (1979), and there reversed the conviction in a unanimous opinion. The issue there was evidence introduced in violation of a constitutional prohibition. Today it is not a question of improper evidence, but a constitutional violation which we consider. The Court goes awry even as it did in LaMere.

It is also to be noted, where the Court seemingly relies upon Chapman as well as LePage, as I heretofore noted in LaMere, 103 Idaho at 871, 655 P.2d at 78, that the Supreme Court in Chapman held "'we have no doubt that the error in these cases was not harmless to petitioners. To reach this conclusion one need only glance at the prosecutorial comments.'" In giving this issue due and proper consideration, it is necessary to keep in mind that the Chapman prosecutor had been given an oratorical license by the California Constitution. That is a far cry from the situation we review today where the majority concedes that the prosecutor's conduct flew directly into the teeth of the district court's ruling secured immediately beforehand.

In sum, the majority who issue today's opinion for the Court speak in terms of the constitutional right to remain silent as mere run-of-the-mill evidence impermissibly interjected, and proceed to see no harm done because in a remarkable display of wisdom it is divined that the jury would have reached the same result had the prosecutor not misbehaved—which is the actual gist of what was stated in LePage, a case which did truly deal with improperly admitted evidence, only that and nothing more. The majority says that this it can do beyond a reasonable doubt. In LePage, however, it was not a majority but a unanimous court which so ruled, even then conceding that the improper evidence was highly damaging and likely contributed to the verdict. In LePage 102 Idaho at page 396, n. 8, 630 P.2d 674, we acknowledged the views expressed in the vigorous four-justice dissent in Milton v. Wainwright, 407 U.S. 371, 92

S.Ct. 2174, 33 L.Ed.2d 1 (1972), wherein Justice Stewart wrote:

> " 'And on the question of whether a jury might possibly have been influenced, the State must "prove beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." *Id.* at 24, 87 S.Ct. at 828.' 407 U.S. at 382–83, 92 S.Ct. at 2180–81."

In *State v. Garcia,* 100 Idaho 108, 594 P.2d 146 (1979), in order to arrive at the belief beyond a reasonable doubt that the prosecutorial conduct there complained of did not *contribute to the conviction,* we held that on a review of the record the evidence was *overwhelming* and *conclusive.* 100 Idaho at 111, 594 P.2d at 149. We noted there that "The purpose of a harmless error rule is to 'block setting aside convictions for small errors or defects that have little, if any, likelihood of having changed the results of the trial.' " 100 Idaho at 111, 594 P.2d at 149.

In *LePage,* which involved a *Massiah* violation, state conduct destroying effective assistance of counsel (*Massiah v. United States,* 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964)), we abruptly departed from our holding in *Garcia,* and followed *Milton v. Wainwright,* commenting that:

> "We have today more squarely faced the question than did the Supreme Court majority in that case by outright conceding that the improper testimony supplied by unconstitutionally planting an officer in the cell adjacent to LePage's *did* contribute to the verdict, but we have nevertheless applied the *Chapman* 'harmless error rule' just as the Supreme Court did in *Wainright, on the basis of overwhelming and conclusive evidence."*

102 Idaho at 396, n. 8, 630 P.2d at 683, n. 8 (emphasis added).

In the text we allowed that "the evidence of LePage's conversation with the State's informant was highly damaging ...; it would border on the absurd to say that the jury ignored it in arriving at their decision." 102 Idaho at 396, 630 P.2d at 683. On the issue of harmless error we ultimately held that "there can be no doubt but that, even excluding the testimony of Thompson (the state's planted informant), LePage would have been convicted by any jury on the strength of the state's case. . . . We are convinced beyond a reasonable doubt that even if the unconstitutionally obtained evidence had been properly excluded from the trial, the jury would have arrived at the same verdict." 102 Idaho at 397, 630 P.2d at 683–84.

In authoring the Court's opinion, I was then of the view that this Court was adhering to the majority (5–4) opinion of the Supreme Court in *Milton v. Wainwright,* which also concerned a *Massiah* violation, as mentioned. Since that time there has been increased criticism of the doctrine of "harmless" constitutional error—a creation of the Supreme Court's own making. Some of that criticism has come from members of the High Court in their opinions. Other criticism has come from the pens of scholars, judges and attorneys. The most telling criticism of which I know was a fifty member class of third-year law students denouncing the doctrine as applied in *LePage.* The thrust of their criticism was an appellate court's usurpation of the fact-finding function of the jury. The question was: How could an appellate court know, really know, what a jury would have done in *LePage*'s case had it not heard the evidence which was constitutionally prohibited under the *Massiah* rule. Not one person in that class of fifty would accept that such a violation could be by an appellate court considered as the trivial error which has been defined in Idaho's criminal code since 1864 as error other than that which "has actually prejudiced the defendant to his prejudice in respect to a substantial right." I.C. § 19–3702. Obviously, those students, now practicing attorneys, shared the view entertained by Justice Shepard when he wrote for this Court:

> "While the due process clauses of the Idaho Constitution, art. 1, § 13, and of the fourteenth amendment to the U.S. Constitution do not guarantee errorless trials, *Donnelly v. DeCristoforo,* 416 U.S. 637, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974),

*they do at least ensure that criminal trials shall be fundamentally fair."*
*Schwartzmiller v. Winters,* 99 Idaho 18, 19, 576 P.2d 1052, 1053 (1978).

What the Supreme Court might have done with our *LePage* case is an interesting speculation.[1] In announcing its *Milton v. Wainwright* doctrine, that Court declined to consider whether a *Massiah* violation had taken place, and simply declared itself as having read the record from which exercise it concluded that there was presented to them, as we ourselves said in *Garcia* and again in *LePage, overwhelming evidence* of Milton's guilt, absent the informant's testimony. Hence, that Court did not bring itself to grips with whether the challenged evidence *contributed* to the jury's conviction. We did so, and admitted that it so contributed, and was highly damaging.

Recently the Supreme Court has revisited its constitutional harmless error doctrine. Whereas *Milton v. Wainwright* was authored by Chief Justice Burger, joined by Justices White, Powell, Rehnquist and Blackmun, Justice Blackmun has authored the recent opinion, and Justice White, who joined the opinion of Chief Justice Burger in *Milton v. Wainwright,* has joined with Justice Blackmun, as did Justices Brennan and Marshall. Justice Stevens in a separate opinion saw no reason for having granted certiorari where the Connecticut Supreme Court had not found harmless error, but joined the judgment of the Supreme Court affirming the judgment of the Connecticut Supreme Court. The importance of Justice Stevens' vote is that he did not join the dissent. Had he done so the dissent would have been the majority. Clearly, Justice Stevens has expressed a preference. The recent opinion issued earlier this year is *Connecticut v. Johnson,* —— U.S. ——, 103 S.Ct. 969, 74 L.Ed.2d 823 (1983). The opinions in the case present us with enlightenment on that Court's present view of constitutional harmless error, and it is important

that this Court, the trial courts, and the trial bar take appropriate note of the content of those opinions.

First of all, it is to be noted that the Court retrenches to *Chapman,* and takes the view that *Chapman* merely continued a trend away from the practice of reversing *"for the most trivial errors."* It is better perhaps, due to the importance of the case and another trend, which I have perceived, of some appellate courts to misuse the harmless error doctrine for a ready manner in which to affirm convictions, to set out the text itself, Part IIA of which is a review of *Chapman,* cases preceding it, and cases following it:

"In *Chapman,* this Court noted that 'there are some constitutional rights so basic to a fair trial that their infraction can never be treated as harmless error.' 386 U.S. at 23, and n. 8, 87 S.Ct. at 828, and n. 8 (citing *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963) (right to counsel); *Payne v. Arkansas,* 356 U.S. 560, 78 S.Ct. 844, 2 L.Ed.2d 975 (1958) (coerced confession); *Tumey v. Ohio,* 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749 (1927) (impartial judge)). Resolving the question reserved three years earlier in *Fahy v. Connecticut,* 375 U.S. 85, 86, 84 S.Ct. 229, 230, 11 L.Ed.2d 171 (1963), the Court held that some constitutional errors may be considered harmless if the beneficiary of the error 'prove[s] beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.' 386 U.S. at 24, 87 S.Ct. at 838. See also *Milton v. Wainwright,* 407 U.S. 371, 92 S.Ct. 2174, 33 L.Ed.2d 1 (1972); *Harrington v. California,* 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969).

"*Chapman* continued a trend away from the practice of appellate courts in this country and in England of 'revers[ing] judgments for the most trivial errors.' R. Traynor, The Riddle of Harmless Error 13 (1970). Even with the en-

---

1. As the *LePage* file in the clerk's office shows, following his conviction, LePage, without counsel and indigent, endeavored to obtain appointment of counsel to petition the Supreme Court for certiorari. By the time this Court caused

counsel to be appointed, his allotted time had expired. Nevertheless, appointed counsel did so petition, but the petition was denied without comment leaving unknown whether untimeliness was the reason.

actment of harmless error statutes designed to eliminate reversals based on technical errors, it was assumed well into this century that 'automatic reversal was required in any case involving the violation of a right guaranteed by the Federal Constitution.' Note, Harmless Error: The Need for a Uniform Standard, 53 St. John's L.Rev. 541, 544 (1979). Before that assumption was altered in *Chapman,* however, the Court had decided certain cases that remain instructive here.

"In *Bollenbach v. United States,* 326 U.S. 607, 66 S.Ct. 402, 90 L.Ed. 350 (1946), the jury returned a guilty verdict just five minutes after receiving a supplemental instruction containing an improper presumption. This Court reversed the conviction, noting that to 'say that the lay jury will know enough to disregard the judge's bad law if in fact he misguides them ... would transfer to the jury the judge's function of measuring the evidence by appropriate legal yardsticks.' *Id.,* at 613–614, 66 S.Ct., at 405–406. The Court rejected the Government's contention that the error was harmless in view of the abundant evidence on the issue in question, stating:

" 'This is to disregard the vital fact that for seven hours the jury was unable to find guilt in the light of the main charge, but reached a verdict of guilty under the conspiracy count five minutes after their inquiry was answered by an untenable legal proposition. It would indeed be a long jump at guessing to be confident that the jury did not rely on the erroneous "presumption" given them as a guide.... [T]he question is not whether guilt may be spelt out of a record, but whether guilt has been found by a jury according to the procedure and standards appropriate for criminal trials in the federal courts.' *Id.,* at 614, 66 S.Ct., at 406.

"The following year the Court decided *Carpenters & Joiners v. United States,* 330 U.S. 395, 67 S.Ct. 775, 91 L.Ed. 973 (1947). In that case the defendants, who were unions charged with conspiracy to violate the Sherman Act, unsuccessfully had requested an instruction that a union can be found guilty for its agents' unlawful acts only if the union actually participated in, authorized, or ratified the acts. This Court held that the requested instruction correctly stated the law, and refused to find the error harmless even though there was evidence showing the unions' participation in the conspiracy:

" '[A] judge may not direct verdict of guilty no matter how conclusive the evidence.. There is no way of knowing here whether the jury's verdict was based on facts within the condemned instructions ... or on actual authorization or ratification of such acts.... A failure to charge correctly is not harmless, since the verdict might have resulted from the incorrect instruction.' *Id.,* at 408–409, 67 S.Ct., at 782 (footnotes omitted).

. . . .

"The Court consistently has held that 'a trial judge is prohibited from entering a judgment of conviction or directing the jury to come forward with such a verdict ... regardless of how overwhelmingly the evidence may point in that direction.' *United States v. Martin Linen Supply Co.,* 430 U.S. 564, 572–573, 97 S.Ct. 1349, 1355–1356, 51 L.Ed.2d 642 (1977); see *Carpenters & Joiners v. United States,* 330 U.S. at 408, 67 S.Ct. at 782; *Sparf & Hansen v. United States,* 156 U.S. 51, 105, 15 S.Ct. 273, 294, 39 L.Ed. 343 (1895)." 103 S.Ct. at 975–76 (footnote omitted).

Justice Blackmun concluded his opinion with language bearing a strong similarity to that of Justice Shepard, above quoted: "Such an error deprived respondent of 'constitutional rights so basic to a fair trial that their infraction can never be treated as harmless error.' *Chapman v. California,* 386 U.S. at 23, 87 S.Ct. at 827–28." *Connecticut v. Johnson,* 103 S.Ct. at 978 (1983). The opinion of Justice Powell, joined by the Chief Justice and Justices Rehnquist and O'Connor serves two laudable purposes. First, it sees that *Chapman*'s harmless error doctrine is *substantially limited* by the

Court's opinion, which is decried in favor of allowing appellate courts to "assess the effect of the error in light of the facts of each case." This ad hoc approach is preferable, says Justice Powell, "For it is only by assessing the weight of the evidence against the defendant that the effect of the error on the jury's verdict can be judged." 103 S.Ct. at 982. Justice Powell also believes that the Supreme Court of the United States, to oblige the attorney for the State of Connecticut, "properly could decide the question of harmless error." [2] 103 S.Ct. at 985. Secondly, the opinion of Justice Powell emphasizes that the states are free to cling to their own constitutions. In doing so he notes that Connecticut has a statute similar to ours:

"The harmless error rule announced in *Chapman* was designed to establish the federal standard necessary 'to protect people from infractions by the States of federally guaranteed rights.' 386 U.S. at 21, 87 S.Ct. at 826. A State, of course, may apply a more stringent *state* harmless error rule than *Chapman* would require. See *PruneYard Shopping Center v. Robins,* 447 U.S. 74, 81, 100 S.Ct. 2035, 2040, 64 L.Ed.2d 741 (1980). 'But . . . a State may not impose such greater restrictions as a matter of *federal constitutional law* when this Court specifically refrains from imposing them.' *Oregon v. Hass,* 420 U.S. 714, 719, 95 S.Ct. 1215, 1219, 43 L.Ed.2d 570 (1975) (emphasis in original). Accordingly, if Connecticut wishes to impose a more stringent standard than the federal rule, it must do so as a matter of state law.

"An examination of Connecticut cases establishes that the State has not taken this course. Connecticut has enacted a

state harmless error statute applicable only to errors of state law or procedure. See Conn.Gen.Stat. § 52–265; *State v. L'Heureux,* 166 Conn. 312, 323–324, 348 A.2d 578, 584 (1974). The state rule is strikingly less stringent than the federal since it places the burden of proving that the error was 'materially injurious' on the party who claims the trial court erred. Connecticut does not apply its state standard to federal constitutional error. It applies instead a federal rule. As the Connecticut Supreme Court explained in *State v. Coleman,* 167 Conn. 260, 355 A.2d 11 (1974):

'The usual rule is that the appellant bears the burden of establishing that an error was "materially injurious" to him. General Statutes [52–265; *State v. L'Heureux,* 166 Conn. 312, 323, 348 A.2d 578. When, however, a federal constitutional error has occurred, the burden shifts to the state, and before the error can be held harmless, this court "must be able to declare a belief that it was harmless beyond a reasonable doubt." *Chapman v. California,* 386 U.S. 18, 24 [87 S.Ct. 824, 828, 17 L.Ed.2d 705] [1967], see also *State v. L'Heureux,* supra.' *Id.* [167 Conn.] at 278–279, 355 A.2d at 20 (footnote omitted).

The state court had adhered consistently to this distinction. See, *e.g., State v. Cooper,* 182 Conn. 207, 212–213, 438 A.2d 418, 421 (1980); *State v. Ruth,* 181 Conn. 187, 196–197, 435 A.2d 3, 7–8 (1980); *Aillon v. State,* 168 Conn. 541, 547–548, 363 A.2d 49, 53 (1975)."

103 S.Ct. at 980.

I have no problem whatever in accepting Justice Powell's expostulation.[3] Under it

---

**2.** This statement is startling. My view is that that court could better occupy its time—a view which I surmise is shared by Justice Stevens.

**3.** Justice Blackmun also addressed state and state court involvement in n. 9, p. 974 of 103 S.Ct., where he said:

"This Court held in *Chapman* that whether a federal constitutional error can be harmless is a federal question. 386 U.S. at 21, 87 S.Ct. at 826. State courts, of course, are free to

interpret their own constitutions and laws to permit fewer applications of the harmless error rule than does the Federal Constitution. See *PruneYard Shopping Center v. Robins,* 447 U.S. 74, 81, 100 S.Ct. 2035, 2040, 64 L.Ed.2d 741 (1980); *Oregon v. Hass,* 420 U.S. 714, 719, 95 S.Ct. 1215, 1219, 43 L.Ed.2d 570 (1975); *Cooper v. California,* 386 U.S. 58, 62, 87 S.Ct. 788, 791, 17 L.Ed.2d 730 (1967)."

this Court could say and should say that the prosecutor's bringing attention to the defendant's silence was not by any stretch of the imagination the most trivial of errors as envisioned in § 19–3702 and within the contemplation of the *Chapman* Court. Whatever other inference did the prosecutor have in mind? And if not thought to be prejudicial to the defendant, why engage in the tactic?

In summary, it is not possible to assess the effect that the prosecutor's improper comments had on the deliberating jury. While it is not evidence, although the majority seems to believe otherwise, it can and will give rise to whatever inferences the jurors individually or collectively decide to place upon it. Jurors come from all walks of life and many and various are the inferences to which they may be drawn. The obvious one is that men who have nothing to hide speak freely, whilst the guilty say nothing. One might well suppose that for twelve jurors there will be twelve versions of that inference. As the majority note, the trial court agreed with defense counsel that the prosecution was attempting "to make of the defendant's silence a tacit admission of guilt."

The harmless error doctrine should never be applied to criminal trials that were not fundamentally fair. Where there has not been a fundamentally fair trial, there should be another trial which rises to that standard. It simply will not do for five, seven, or nine appellate judges to uphold convictions derived by trials not fundamentally fair on the predicate that a review of the evidence convinces those judges that the defendant would always be convicted by any reasonable jury on the evidence which was proper. It is, of course, usurpation of the jury function.

If it be that an accused cannot be convicted except by a unanimous jury all members of which are convinced of his guilt beyond a reasonable doubt, how can it be that the accused can be convicted by an appellate court which is not unanimous in believing that any reasonable jury would convict the accused without the prosecutor's improper and inflammatory rhetoric, or reference to and comment on the accused's silence, or the admission of constitutionally impermissible evidence—all to the accused's substantial prejudice?

Can the day be far ahead when an accused can be denied a trial by jury, convicted by the court, and the conviction affirmed by an appellate court which reasons that its review of the evidence shows it to be so overwhelming that any reasonable jury would have convicted the accused, for which reason the error in not affording the accused a trial by jury is naught but constitutional harmless error.

I concur in that much of the Court's opinion which upbraids the prosecutor for his tactics, and agree also that the opinion correctly analyzes the reference to uncontradicted testimony concerning the identity of the pills. I dissent from the Court's view that displaying the defendant's silence to the jury was harmless error simply because, so it is said, admissible evidence established conclusive proof of the defendant's guilt. This determination I would leave for a unanimous jury of defendant's peers at a second trial, not a majority of an appellate court. For the reasons set out above, I cannot join the opinion of the Court affirming the judgment of the district court, but would remand for the fundamentally fair trial Justice Shepard says is mandated by the Idaho Constitution.