IN THE COURT OF APPEALS OF THE STATE OF IDAHO
Docket No. 38229

| STATE OF IDAHO, | ) | 2012 Unpublished Opinion No. 541 |
| | ) | |
| Plaintiff-Respondent, | ) | Filed: June 28, 2012 |
| | ) | |
| v. | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| WILLIAM THOMAS SCOTT, JR., | ) | THIS IS AN UNPUBLISHED |
| | ) | OPINION AND SHALL NOT |
| Defendant-Appellant. | ) | BE CITED AS AUTHORITY |
| | ) | |

Appeal from the District Court of the Fifth Judicial District, State of Idaho, Cassia County. Hon. Michael R. Crabtree, District Judge.

Judgment of conviction for delivery of a controlled substance within 1000 feet of a school, affirmed.

Sara B. Thomas, State Appellate Public Defender; Spencer J. Hahn, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Jessica M. Lorello, Deputy Attorney General, Boise, for respondent.
_____

GUTIERREZ, Judge

William Thomas Scott, Jr. appeals from his judgment of conviction entered upon a jury verdict finding him guilty of delivery of a controlled substance within 1000 feet of a school. For the reasons set forth below, we affirm.

## I.

## FACTS AND PROCEDURE

Officers with the Cassia County Sheriff's Office set up a controlled methamphetamine buy between a confidential informant and Scott, whom the informant had known for years and had identified as a source for drugs. In exchange for her cooperation, the informant, who had been charged with possession of methamphetamine with the intent to deliver, was allowed to participate in a drug court program in lieu of incarceration.

The informant arranged the purchase from Scott over the telephone in several calls recorded by law enforcement. After being searched by officers and having her vehicle searched

1

as well, the informant drove her vehicle to the location Scott chose to deliver the drugs. She was followed by several officers conducting surveillance, none of whom were close enough to see the actual transaction take place or to positively identify Scott, but who saw a vehicle registered to Scott approaching the area and stopping near the informant's vehicle. Upon the informant's return to the Sheriff's office, officers recovered a bag containing a substance later identified as methamphetamine. Because the transaction occurred near Burley Junior High School, Scott was charged with delivery of a controlled substance within 1000 feet of a school, Idaho Code §§ 37-2732(a)(1)(A), 37-2739B(b)(2).

At trial, the informant testified in detail as to the transaction, identifying Scott as the person who delivered the methamphetamine. The officers involved also testified as to the incident and their observations. Scott neither presented any witnesses, nor testified on his own behalf. In closing argument, the prosecutor stated on numerous occasions, without objection from the defense, that the evidence in regards to various individual elements of the crime was "undisputed" or "uncontradicted." The jury found Scott guilty as charged, and he now appeals.

## II.

## ANALYSIS

Scott contends the prosecutor's eight references during closing arguments, that the State's evidence was uncontradicted or undisputed, constituted fundamental error in violation of Scott's Fifth Amendment right to remain silent. The prosecutor's comments during closing argument were as follows:

> First of all, on or about February 13th, 2009. The evidence is *undisputed, uncontradicted* that this controlled buy happened on that date.
> . . . .
> . . . Number two, in the State of Idaho. That evidence also is *uncontradicted*. It was confirmed by a number of witnesses that the controlled buy happened in Cassia County, in the city of Burley, in the State of Idaho, even narrowed down to almost the exact place on 13th Street where the controlled buy happened.
> . . . .
> . . . The *only* evidence before you is that the substance in question was methamphetamine. . . . Again, that point is essentially *undisputed.*
> . . . .
> . . . Also contained within point number three, that it was William Scott, the defendant in this case, that delivered that methamphetamine. That evidence also is *uncontradicted and undisputed.* Every witness who had any connection to

2

this case as far as the controlled buy or the surveillance connected William Scott to that controlled buy in some way.

    [The informant] had to face Mr. Scott, the man who sold her that methamphetamine, and identify him publicly in court. She did that, and that identification was *undisputed*.

    . . . .

    Her testimony, again, is that he sold her or delivered [to] her methamphetamine, and there is *no evidence to contradict that*. In fact, all of the other evidence introduced in this trial corroborates or supports her testimony.

    . . . .

    Instruction Number 16 will be the next big question, and that is very straightforward, very simple, and that is simply whether the delivery occurred within 1,000 feet of the property of any public or private, primary or secondary school. Again, the evidence was completely *uncontradicted*.

(Emphasis added.)

The prosecutor then stated, during rebuttal argument:

[The informant] was being honest. She was telling you what happened, and that evidence is *uncontradicted*.

    . . . .

    . . . [The informant] was under oath. She promised to tell the truth, and there was [no] evidence to *contradict* that.

(Emphasis added.)

Scott argues the prosecutor's repeated references to the informant's testimony as "uncontradicted," as well as other comments that the evidence was "uncontradicted" or "undisputed," constituted comments regarding the exercise of his Fifth Amendment right not to testify. Although Scott made no objection at trial to the prosecutor's statements, Scott contends this claimed violation of his constitutional right not to testify should be reviewed on appeal as fundamental error.

According to the Idaho Supreme Court, to obtain relief on appeal for fundamental error the following three prongs must be met: (1) the defendant must demonstrate that one or more of the defendant's unwaived constitutional rights were violated; (2) the error must be clear or obvious, without the need for any additional information not contained in the appellate record, including information as to whether the failure to object was a tactical decision; and (3) the defendant must demonstrate the error affected the defendant's substantial rights, meaning (in most instances) that it must have affected the outcome of the trial proceedings. *State v. Perry*, 150 Idaho 209, 226, 245 P.3d 961, 978 (2010). If the alleged error satisfies the first two

3

elements of the *Perry* test, the error is reviewable. *Id.* To obtain appellate relief, however, the defendant must further persuade the reviewing court the error was not harmless, *i.e.*, that there is a reasonable possibility the error affected the outcome of the trial and thereby prejudiced the defendant. *Id.*

Scott maintains the first prong of the *Perry* test is satisfied here because the prosecutor's comments violated the Fifth Amendment guarantee that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." U.S. CONST. amend. V. This constitutional safeguard forbids prosecutorial comments to the jury regarding a defendant's failure to testify at trial. *Griffin v. California*, 380 U.S. 609, 615 (1965). It encompasses both direct and indirect references to the choice not to testify. *State v. Hodges*, 105 Idaho 588, 592, 671 P.2d 1051, 1055 (1983); *State v. McMurry*, 143 Idaho 312, 314, 143 P.3d 400, 402 (Ct. App. 2006). However, we will not lightly infer that a prosecutor intends an ambiguous remark to have its most damaging meaning or that a jury, sitting through lengthy exhortation, will draw that meaning from the plethora of less damaging interpretations. *State v. Severson*, 147 Idaho 694, 719, 215 P.3d 414, 439 (2009). Rather, we examine whether the language used was manifestly intended or was of such character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify. *McMurry*, 143 Idaho at 315, 143 P.3d at 403.

A prosecutor's use of words implying a requirement of a personal response by the accused may reflect upon the defendant's failure to take the stand and deny guilt. *McMurry*, 143 Idaho at 315, 143 P.3d at 403. In *McMurry*, we held that the defendant's Fifth Amendment privilege was violated by the prosecutor's comments regarding the absence of any evidence contradicting the victim's testimony about actions that allegedly occurred when only the victim and the defendant were present. *Id.* On the other hand, a prosecutor's general references to uncontradicted evidence do not necessarily refer to the absence of testimony from the defendant if witnesses *other than the defendant* could have contradicted the evidence. *Id.* at 314, 143 P.3d at 402. Thus, in *Hodges*, our Supreme Court held the defendant's privilege against self-incrimination was not violated when the prosecutor commented on an expert's "uncontradicted" testimony that a substance was cocaine because the defendant was not the only logical witness who could have disputed the expert's testimony. *Hodges*, 105 Idaho at 591-92, 671 P.2d at 1054-55. In addition, a prosecutor may rebut defense counsel's arguments and defenses. *McMurry*, 143 Idaho at 315, 143 P.3d at 403. However, in so doing, the line between

4

a legitimate rebuttal of defense counsel's arguments and an indirect comment on the fact that the defendant has not taken the stand is often a very thin one. *Id.* Indeed, even where prosecutorial comments refer to the absence of testimony on an issue that witnesses other than the defendant could have contradicted, there may necessarily be an indirect *Griffin* violation depending on the number and nature of those comments. *McMurry*, 143 Idaho at 314-15, 143 P.3d at 403-04. As the Sixth Circuit Court of Appeals stated in *Raper v. Mintzes*, 706 F.2d 161, 167 n.5 (6th Cir. 1983), "We do not suggest that any magic number will constitute a violation of *Griffin* but the number of comments, along with their nature, is a key factor." Courts uniformly condemn this prosecutorial tactic due to the difficulty of determining whether *Griffin* violations are constitutionally harmless. *McMurry*, 143 Idaho at 315, 143 P.3d at 403.

Initially, we note that four of the prosecutor's statements--that the evidence was undisputed as to the date of the transaction, that the transaction occurred in Idaho, that the location of the transaction was within 1000 feet of a school, and that the substance delivered was methamphetamine--were not the type of statements generally constituting impermissible references to the failure of the defendant to testify. As we stated in *McMurry*, 143 Idaho at 314, 143 P.3d at 402, a prosecutor's general references to uncontradicted evidence does not necessarily refer to the absence of testimony from the defendant *if witnesses other than the defendant could have contradicted the evidence*. Similar to the issue in Hodges, the prosecutor's comments in this case, that it was "undisputed" that the substance was methamphetamine, did not constitute an impermissible comment on Scott's silence, as Scott was not the only logical witness who could have disputed the expert's testimony as to the nature of the substance. Likewise, Scott was not the only logical witness to dispute the testimony that the transaction occurred on a certain date within the State of Idaho, which the informant and several detectives testified to, or that it occurred within 1000 feet of a school, as testified to by Detective Kevin Horak after he personally measured the distance. For example, as to the latter point, the defendant could have introduced his own witness qualified to testify as to the distance of the point of the "alleged" transaction and the school.

Possibly more problematic, however, were the prosecutor's repeated statements that the informant's testimony, that Scott was the only person in the vehicle and was the person who sold her the methamphetamine, was undisputed, given that none of the officers witnessed the actual transaction occur. However, as the State points out, when the statements are read in context,

5

there are grounds from which one could surmise the prosecutor was not intending to comment on Scott's failure to testify, or that the jury would necessarily interpret it as such, but rather that the prosecutor was attempting to support the informant's testimony, which Scott challenged as not credible given that she was given leniency in exchange for her participation in the drug buy and her testimony at trial. The prosecutor attempted to support the informant's testimony by stating her testimony was corroborated by other evidence in the case, including the recorded phone calls and the testimony of the law enforcement officers who conducted surveillance before, during, and after the buy; in other words, the prosecutor was stating that the informant's testimony was uncontradicted by the *other evidence produced at trial*. For example, after defense counsel attacked the informant's credibility in closing argument, the prosecutor stated the following in rebuttal, which included two of the statements at issue:

> We do have to rely on [the informant] to some extent, and that's why the police do everything they can to follow all these rules and regulations. All of the evidence is documented. They fill out all of this paperwork . . . . They do everything they can to make sure all of this is on the up-and-up, and there simply is no reasonable explanation other than William Scott sold his methamphetamine to [the informant]. You heard her testimony. You saw her demeanor. You saw that she was trying to be open. She was being honest. She was telling you what happened, and that evidence is *uncontradicted.*
>
> Again, even though there was not a law enforcement officer literally standing there watching the transaction, they saw William Scott's car going to the transaction. You hear the tapes. They saw how quickly it happened. They see his vehicle leaving that area. They follow it to his home on Conant. They see him right after he's gotten out of the car. That's a very strong corroboration.
>
> You can argue that every witness has some kind of bias or some kind of motive. [The informant] was an informant. She was being compensated. Part of her agreement was that she had to promise to tell the truth. You'll see that in the paperwork. It was an agreement that was approved by the prosecuting attorney of Minidoka County. That wasn't just a police officer deciding to do something on a whim. They went through all of the right steps here. She was under oath. She promised to tell the truth, and there was *[no] evidence to contradict* that.

(Emphasis added). Because officers were present in the general vicinity of the transaction, this case is distinguishable from *State v. Whitaker*, 152 Idaho 945, 277 P.3d 392 (Ct. App. 2012), where we held it was error for the prosecutor to argue the testimony was "uncontroverted" as to sexual contact and related incidents that occurred when *only* Whitaker and one of the victims were present, because Whitaker was the only logical witness to rebut the testimony.

6

However, we need not resolve the issue of whether these statements constituted plain error because we conclude Scott has failed to satisfy the third *Perry* prong: he has not shown a reasonable possibility the error, assuming it occurred, affected the outcome of the trial. *Perry*, 150 Idaho at 226, 245 P.3d at 978. Whether trial errors could have affected the outcome of a trial generally depends, in part, upon the strength of the properly admitted evidence of guilt. *Whitaker*, 152 Idaho at 952, 277 P.3d at 399. Contrary to Scott's contention that his conviction was "based almost exclusively on the testimony of one drug-addicted, drug-dealing police informant," beyond the informant's detailed testimony that she had known Scott for years prior to the buy and he was the person who delivered the methamphetamine to her at the buy, the State also presented evidence from several investigating officers corroborating the informant's identification of Scott. There was evidence presented that the vehicle seen arriving in the vicinity of the drug deal was registered to Scott. Detective Terry Bell, who was conducting surveillance during the transaction, testified he saw the vehicle that was registered to Scott in the vicinity, watched as the informant pulled her vehicle behind Scott's vehicle, and then saw both vehicles stop together in the area the informant testified the drug transaction took place. Detective Bell also testified that after Scott's vehicle left the area, the detective followed the vehicle to an address on Conant where he watched the driver back the vehicle into a driveway and saw who he identified as Scott walking away from the vehicle into the house. Detective Horak testified he had recorded calls between the informant and Scott during which they set up the drug buy. Detective Horak further testified he recognized Scott's voice on the phone recordings, as well as the recording from the drug buy itself during which the informant had been wearing a wire. He also testified that approximately two weeks after the drug buy in question, he observed the vehicle seen at the scene of the buy at the Conant address and saw Scott getting into the vehicle. The officers involved in the operation also testified as to the procedures taken to ensure a legitimate drug buy occurred, including searching the informant and her vehicle before and after the buy and following the informant to and from the scene of the buy to make sure she did not take any detours.

Scott's defense consisted largely of pointing out that none of the officers had seen the actual transaction take place and attacking the informant's credibility on the basis that she had received leniency--specifically, that after being convicted of possession of methamphetamine with the intent to deliver, the informant was not sentenced to incarceration and was allowed to go

7

through a drug court program. The State countered this attack on the credibility of the informant, pointing out the informant had not gotten off "free" for her involvement, but had pled guilty to a felony crime, went through an "intense" drug court program from which she graduated, and had remained free from drugs.

After a review of all the evidence and arguments, we are convinced beyond a reasonable doubt that the prosecutor's comments did not contribute to the jury's verdict. The informant, whom the jury apparently found credible, testified in detail as to the transaction, much of which was corroborated by significant other evidence, including recordings of phone calls between the informant and Scott setting up the buy, the recording of the transaction itself, and the testimony of several officers who saw Scott's vehicle stop near the informant's vehicle immediately preceding the transaction and who saw Scott near the vehicle after the transaction. By contrast, Scott offered little in the way of a convincing defense, relying largely on the jury finding the informant not credible; however, aside from the fact she was given a lesser sentence for her cooperation, Scott did not succeed in raising any serious issues as to her credibility. This is especially true where she was largely corroborated by the officers, there was evidence the undercover buy had been conducted according to established procedures, and she was a recovered drug addict who had successfully completed a strenuous drug court program. *Accord Whitaker*, 152 Idaho at 952-53, 277 P.3d at 399-400 (holding that while it was error for the prosecutor to comment on Whitaker's failure to testify by repeatedly stating the victims' testimony was uncontroverted, the error was not reversible under the fundamental error standard because, given the amount of evidence of his guilt and the relatively weak defense mounted, Whitaker had not proven beyond a reasonable doubt that the effect of the comments contributed to the jury's verdict). *Cf., McMurry*, 143 Idaho at 316, 143 P.3d at 404 (holding it could not be said the prosecutor's impermissible comment on McMurry's failure to testify did not contribute to the verdict because there was *strong* evidence as to her self-defense claim). Accordingly, we conclude the prosecutor's comments did not constitute reversible error, and Scott's judgment of conviction for delivery of a controlled substance within 1000 feet of a school is affirmed.

Judge LANSING and Judge MELANSON **CONCUR.**