Justice W. JONES
dissenting:
I respectfully dissent as follows:
I disagree with the majority’s analysis on whether the numerous and substantial errors committed during trial require reversal pursuant to the cumulative error doctrine; therefore, I respectfully dissent in the conclusion of that section and the result. Further, I dissent from the majority’s classification of the prosecutor’s misconduct during closing arguments as not constituting fundamental error. I find the prosecutor’s conduct relentless and a blatant abuse of power; time and time again the prosecutor continued to engage in a pattern of conduct which waivered on and over the edge of appropriate conduct. Severson’s fifth issue on appeal asserted that he was “denied a fair trial due to the serious and unrelenting acts of prosecutorial misconduct.” I am limiting my dissent to comments made by the prosecutor during closing arguments and whether the accumulation of any alleged errors warrant reversal pursuant to the cumulative error *724 doctrine. I do not find any one statement, in and of itself, sufficient to warrant reversal. However, I do find a pattern of conduct where the prosecutor continually made arguments for the sole purpose of appealing to the passions and prejudices of the jury.
Severson did not object to any of the statements made during closing arguments; therefore, this Court reviews whether the statements constitute fundamental error. See State v. Anderson, 144 Idaho 743, 748, 170 P.3d 886, 891 (2007). “An error is fundamental when it ‘so profoundly distorts the trial that it produces manifest injustice and deprives the accused of his fundamental right to due process.’ ” Id. (quoting State v. Lavy, 121 Idaho 842, 844, 828 P.2d 871, 873 (1992)). Any alleged misconduct on the part of the prosecutor must be shown to have materially contributed to the jury verdict. State v. Griffiths, 101 Idaho 163, 167, 610 P.2d 522, 526 (1980).
“While the due process clauses of the Idaho Constitution, art. 1, s 13, and the fourteenth amendment to the U.S. Constitution do not guarantee errorless trials ... they do at least ensure that criminal trials shall be fundamentally fair.” Schwartzmiller v. Winters, 99 Idaho 18, 19, 576 P.2d 1052, 1053 (1978). “It is the duty of a prosecuting attorney to see that the accused has a fair and impartial trial.” State v. Spencer, 74 Idaho 173, 183, 258 P.2d 1147, 1153 (1953) (finding that the prosecutor’s misconduct warranted a new trial). In closing arguments, “[t]he prosecutor should not make arguments calculated to appeal to the prejudices of the jury.” ABA Standards for Criminal Justice: Prosecution and Defense Functions § 3-5.8 (3d. ed.1993). The prosecutor is charged with the dual task of ensuring that the government’s case is presented “earnestly and vigorously, using every legitimate means to bring about a conviction, but also to see that justice is done and that every criminal defendant is accorded a fair trial.” State v. Reynolds, 120 Idaho 445, 449, 816 P.2d 1002, 1006 (Ct.App.1991).
Under the harmless error rule, “[a]ny error, defect, irregularity or variance which does not affect substantial rights shall be disregarded.” I.C.R. 52. The purpose of the harmless error doctrine is to prevent setting aside convictions for small errors or defects which were unlikely to affect the result at trial. Reynolds, 120 Idaho at 451 n. 5, 816 P.2d at 1008 n. 5 (quoting Chapman v. California, 386 U.S. 18, 22, 87 S.Ct. 824, 827, 17 L.Ed.2d 705, 709 (1967)). “The cumulative error doctrine refers to an accumulation of irregularities, each of which by itself might be harmless, but when aggregated show the absence of a fair trial in contravention of the defendant’s right to due process.” State v. Gross, 146 Idaho 15, 21, 189 P.3d 477, 483 (Ct.App.2008). Therefore, the comments made by the prosecutor should be addressed by the cumulative effect of the improper statements. Id. In order to find cumulative error there must be an accumulation of actual errors. State v. Hawkins, 131 Idaho 396, 407, 958 P.2d 22, 33 (1998).
The purpose of “[closing argument serves to sharpen and clarify the issues for resolution by the trier of fact in a criminal case .... [t]o enlighten the jury and to help the jurors remember and interpret the evidence.” State v. Phillips, 144 Idaho 82, 86, 156 P.3d 583, 587 (Ct.App.2007) (internal quotations omitted).
Appellant alleges errors by the prosecutor during closing arguments when the prosecutor commented on Severson’s right to remain silent and continually appealed to the passions and prejudices of the jury. The violations are so numerous that I am quoting all offensive statements from closing arguments, even those not specifically cited to by appellant in his brief.
The prosecutor made the following remarks in regard to Severson’s right to remain silent:
We are talking about science here; and [the defense attorney’s] note — that he tore down — said, “[t]heory versus fact.” Well, in the real life in this courtroom, the great leveler of society in here, theory and fact do work together.
It is not a balloon, where one little microscopic pin breaks the whole balloon. This is a circumstantial case, because nobody was in that house that night but Mary and *725 Larry. Nobody knows, that has testified, what happened between them.
[Mary’s] mouth opened easily. No one else in this courtroom has testified in front of you, that was there, that they injured Mary Severson’s face. The only thing that they can tell you, [from expert testimony], is, these injuries [to her mouth] are consistent with bruising of somebody who could have been smothered.
(Emphasis added). The prosecutor made the following remarks which could have ignited passion and prejudice in the jury by improperly appealing to their emotions:
[The trip back to Mountain Home in an attempt to rectify the marriage] didn’t go over too well. On December 18th, [Mary] came back for Christmas to stay, left her mom’s house and came back [to Mountain Home], drove back for Christmas, her last Christmas with her family.
The only thing we have got in this ease is what the house can tell us of why Mary died, what the business tells us of why Mary died. The Hydroxyeut will tell us of why Mary died, and what Mary tells us about why and how she died.
Mary does speak to us today 33 months later. Mary still speaks to us today. She is still telling us what happened that night and why she is dead.
During [the time Mary was with her mother in Colorado] the defendant is out gallivanting around with [his girlfriend]. Some people are even saying, ‘Oh, I didn’t know you had a daughter.” “Well, it’s my fiancée.” [Severson] says it’s his fiancée.
So, Mary gets to come home in October to find that this 21-year-old tramp has gone inside her house and painted her guest bathroom.
Yeah, [Mary] had some mild depression. Who wouldn’t, after finding out your husband is screwing some 21-n/ear-old, having an affair with some 21-year-old girl, and you’re getting shipped back to Colorado. Who wouldn’t be a little depressed about that, as a young woman?
Could [somebody else have tampered with the Hydroxyeut bottle]? I suppose, in the same way that there are little green aliens could be coming to us from Mars or something. It is possible in one way, shape, or form that that’s exactly what somebody did.
Mary tells us, she speaks to us from her grave as to who killed her and why she died. All of these circumstances tell us that her body left the indelible evidence that [the defense] cannot get past, and nobody can get past.
[The defendant’s son] didn’t see [the bruises on Mary’s face prior to administering CPR].[38] He wasn’t doing that much. That’s force. That’s effort. That’s putting your hand, at least plausibly, in somebody’s face and making sure the breath is out of there. And making sure you have done the job right, because by God that woman just won’t die. She’s strong; she is the strong one.
Please don’t hold that fact, that [the other prosecutor misspoke and] may have said [the defendant’s girlfriend] was nineteen instead of the ripe old age of 21. Or, she still looks like she is about 19.
And I guess all the witnesses say that they saw Larry running around with a girl they thought was his daughter, who was a teenager, who was all of age 18 or 19. That may have been playing in the [other prosecutor’s] mind.
[The defense attorney] talked a lot about what went on that day, and “[w]e don’t’ know this, and we don’t know that.” He is *726 right. I would love to talk to Mary Sever-son and find out, on the early-morning hours of February 15th, how she was feeling. How did the meal make her feel? How did it feel to go to dinner with her husband, and not be able to order the food you want?[39]
How many sleeping pills did she take? Why did she take them? If she took them, did she know how many she took?
I don’t get [to] do that. I don’t get to ask those questions. Nobody does. All we know is that according to [the State’s expert] — I think a very credible individual, with nothing to lose in this matter — gave you a good answer as to how he figured out the total[ ] [number of pills].
We are done: [the defense counsel] and I, and [co-counsel]. Our job here before you is complete. Innocent until proven guilty, yes. Today ends that preposition.
There is no innocence in this courtroom except the innocence of Mary Severson. She didn’t have to die. The only reason she did was the lust and greed of the defendant to get out of a marriage rather than divorce so he could get all the money and then some; and he could pursue his other women, not this fat woman that he saw in front of him who refused to give him the divorce.
You have a difficult decision to make. There’s people in this courtroom who have been here the entire time that you have heard from. Mary Severson isn’t a body. Mary Severson isn’t a picture of bruises. Mary Severson isn’t a decedent.
Mary Severson was the 35-year-old mother of two boys. Mary Severson was the daughter of Carol Diaz. Mary Severson was the sister of Maria Gray. Mary Sever-son’s life had a purpose, and it had meaning. Your duty today is to give her death justice. Thank you.
(Emphasis added).
I find the prosecutor’s comment on Sever-son’s right to remain silent the most egregious and offensive of all the comments made during closing arguments. The comments served no other purpose then to draw attention to the fact that Severson chose to exercise his constitutional right not to testify at his trial. I can see no other purpose in the statement. The majority sweeps the statement under the rug by conclusively finding that the statement is “ambiguous” and a “single isolated comment” over the course of a “seventeen-day trial, [where] there was substantial evidence of Severson’s guilt.” I do not find the prosecutor’s statements as innocent as the majority plays them out to be; further, I find a complete lack of other meanings which a jury may attach to the statement “nobody was in that house that night but Mary and Larry[] nobody knows, that has testified, what happened between them.” In context it is clear that the prosecutor was referring to the events that occurred between Mr. and Mrs. Severson on the night of Mrs. Severson’s death. The prosecutor then clearly states that based on the fact that only two people were present, and one of them is dead, there is only one other person who has knowledge of the details which unfolded that fateful night, and that person did not testify. The meaning is anything but ambiguous and a blatant violation of Severson’s constitutional right to remain silent.
[I]t is not possible to assess the effect that the prosecutor’s improper comments had on the deliberating jury.... [I]t can and will give rise to whatever inferences the jurors individually or collectively decide to place upon it. Jurors come from all walks of life and many and various are the inferences to which they may be drawn. The obvious one is that men who have nothing to hide speak freely, whilst the guilty say nothing. One might well suppose that for twelve jurors there will be twelve versions of that inference.
State v. Hodges, 105 Idaho 588, 599, 671 P.2d 1051, 1062 (1983) (Bistline, J., dissenting).
It is improper for a prosecutor to appeal to the emotions, passion or prejudice of the jury through the use of inflammatory tactics. Phillips, 144 Idaho at 87, 156 P.3d at 588. *727 The majority finds that “[t]he prosecutor’s references to Mary’s family, while arguably improper, did not constitute fundamental error.” I disagree. It is improper for a prosecutor to make references to a victim’s family during closing arguments. The prosecutor’s statements referring to Mary Severson as a mother, a daughter and a sister were used to serve only one purpose, and that is to appeal to the passions of the jury by referencing the victim’s family. I find that this behavior rises to the level of fundamental error and is not “merely reiterating] evidence that had been produced at trial.” The prosecutor’s conduct used Mary’s family as a means to convict Severson by appealing to the jury’s passions and infringed on Severson’s right to a fair trial.
Further, I find that the repeated references to Severson’s affair constitute fundamental error. There is a subtle difference in producing evidence of Severson’s affair at trial and referring to that affair as Severson “screwing some 21-year-old ... tramp.” I agree with the majority that these statements are inflammatory and improper. The prosecutor attempted to paint a picture for the jury of Severson running around womanizing while his wife laid dying at home wallowing in self-pity over her recent weight gain. These tactics do not serve any purpose other than to gain a conviction through improper means.
A review of the history of instances of prosecutorial misconduct in this state discloses an interesting pattern. Originally, this Court found little humor in any misconduct committed by the prosecutor’s office. See State v. Irwin, 9 Idaho 35, 45, 71 P. 608, 611 (1903) (holding that acts of prosecutorial misconduct that prejudice the rights of the defendant warrant reversal). Currently, our appellate system has engaged in a pattern of finding all errors committed as a result of prosecutorial misconduct to constitute harmless error. Over the last ten years this Court has addressed the issue of prosecutorial misconduct in eight separate eases, finding that misconduct occurred in five of those cases, but also finding that none of those cases warranted reversal of the conviction. See State v. Field, 144 Idaho 559, 165 P.3d 273 (2007); State v. Christiansen, 144 Idaho 463, 163 P.3d 1175 (2007); State v. Sheahan, 139 Idaho 267, 77 P.3d 956 (2003); State v. Page, 135 Idaho 214, 16 P.3d 890 (2000); State v. Hairston, 133 Idaho 496, 988 P.2d 1170 (1999). Further, the court of appeals has found that prosecutorial misconduct existed in ten cases over the last five years. See State v. Gerardo, 147 Idaho 22, 205 P.3d 671 (Ct.App.2009); State v. Coffin, 146 Idaho 166, 191 P.3d 244 (Ct.App.2008); State v. Contreras-Gonzales, 146 Idaho 41, 190 P.3d 197 (Ct.App.2008); State v. Timmons, 145 Idaho 279, 178 P.3d 644 (Ct.App.2007); State v. Morgan, 144 Idaho 861, 172 P.3d 1136 (Ct.App.2007); State v. Kuhn, 139 Idaho 710, 85 P.3d 1109 (Ct.App.2003); State v. Anderson, 138 Idaho 359, 63 P.3d 485 (Ct.App.2003). But, further found that only three of those cases warranted reversal due to acts of misconduct by the prosecutor’s office. See Gross, 146 Idaho 15, 189 P.3d 477; State v. Beebe, 145 Idaho 570, 181 P.3d 496 (Ct.App.2007); Phillips, 144 Idaho 82, 156 P.3d 583. The court of appeals declined to address the issue of whether misconduct existed in two additional cases because the error was harmless in light of the evidence produced at trial. See State v. Gamble, 146 Idaho 331, 193 P.3d 878 (Ct.App.2008); State v. Romero-Garcia, 139 Idaho 199, 75 P.3d 1209 (Ct.App.2003).
Previously, this Court has stated that “[w]here the record shows that the prosecuting attorney has been guilty of misconduct calculated to inflame the minds of jurors and arouse prejudice or passion against the accused by statement in [the prosecutor’s] argument of facts not proved by evidence, the conviction will be set aside and a new trial granted.” Spencer, 74 Idaho at 183-84, 258 P.2d at 1154. However, the Court quickly limited reversals to instances “[w]here the issue of guilt is debatable or it appears from the record that the jurors could have reasonably entertained doubt as to the defendant’s guilt and that misconduct of the prosecuting attorney might well have influenced the result.” Id. at 184, 258 P.2d at 1154. “The standard for determining whether error of constitutional dimension is ‘harmless,’ ... [is whether] the court [is] able to declare a belief that it was harmless beyond a reason *728 able doubt.” State v. LePage, 102 Idaho 387, 393, 630 P.2d 674, 680 (1981) (internal quotation omitted).
There is no “authority for the proposition that a fair trial has been had when the verdict is tainted by the jury’s exposure to inflammatory rhetoric.” State v. LaMere, 103 Idaho 839, 869, 655 P.2d 46, 76 (1982) (Bistline, J., dissenting).
The harmless error doctrine should never be applied to criminal trials that were not fundamentally fair. Where there has not been a fundamentally fair trial, there should be another trial which rises to that standard. It simply will not do for five, seven, or nine appellate judges to uphold convictions derived by trials not fundamentally fair on the predicate that a review of the evidence convinces those judges that the defendant would always be convicted by any reasonable jury on the evidence which was proper. It is, of course, usurpation of the jury function.
Can the day be far ahead when an accused can be denied a trial by jury, convicted by the court, and the conviction affirmed by an appellate court which reasons that its review of the evidence shows it to be is so overwhelming that any reasonable jury would have convicted the accused, for which reason the error in not affording the accused a trial by jury is naught but constitutional harmless error.
Hodges, 105 Idaho at 599, 671 P.2d at 1062 (Bistline, J., dissenting).
In the present case, the prosecutor’s comments “were not only made by an officer of the court, but they were made in the closing or last speech to the jury, when there was no opportunity for defendant’s counsel to criticize or answer them.” Irwin, 9 Idaho at 42, 71 P. at 610.
The prosecutor’s office has been granted leeway by the appellate courts for too long with respect to allegations of misconduct. “It seems that [prosecutors] frequently exert their skill and ingenuity to see how far they can trespass upon the verge of error, and generally in so doing they transgress upon the rights of the accused.” Id. at 44, 71 P. at 611. As cautioned by the United States Supreme Court over forty years ago, the “harmless-error rules can work very unfair and mischievous results when, for example, highly important and persuasive evidence, or argument, though legally forbidden, finds its way into a trial in which the question of guilt or innocence is a close one.” Chapman, 386 U.S. at 22, 87 S.Ct. at 827, 17 L.Ed.2d at 710.
Cumulatively, these errors taken as a whole were not harmless. The relentless acts of the prosecutor deprived Severson of his right to a fair trial. The cautionary tales that were developed in the appellate system along with the harmless error doctrine have become our current reality. The more certain a prosecutor is that s/he has conclusive evidence of a defendant’s guilt; the freer s/he is to trample upon a defendant’s constitutional rights. Further, throughout this process the prosecutor remains secure in the knowledge that an appellate court will affirm, holding that the violations were simply “harmless error.” At what point does a reviewing appellate court find that a prosecutor’s misconduct that blatantly violates a defendant’s constitutional rights constitutes non-harmless error? This Court has determined that the turning point exists when we are certain that any jury would find a defendant guilty beyond a reasonable doubt. How can an appellate court justify which defendants are entitled to a fair trial based entirely on the rationale that any reasonable jury would have convicted the defendant based on the evidence presented? For instance, could a trial court deny a defendant the assistance of counsel and deny him the right to a jury trial and find the defendant guilty of a crime and have an appellate court state that it is convinced beyond a reasonable doubt that the defendant would have been convicted in any event by any jury? Even in light of the absurdity of this example, at which point does the error cross the arbitrary threshold of harmless? Would it be the denial of counsel, the denial of a jury trial, or the combination of the two?
Allowing the harmless error doctrine to dismiss instances of blatant prosecutorial misconduct has effectively substituted our appellate court for the right to trial by jury. *729 It seems that too often this Court has dismissed the claims of prosecutorial misconduct, holding that it is convinced beyond a reasonable doubt the defendant would have been found guilty anyway. Although I believe there was substantial evidence supporting the guilty verdict in this case, I also believe Severson was not afforded a fair trial. Justice is served only when a defendant is either convicted or acquitted following a fundamentally fair trial. Since I do not believe Severson’s trial was fundamentally fair, I would reverse the conviction and remand for a new trial.
Justice Pro Tern KIDWELL concurs.

. The prosecution asserted an argument at trial that the bruises were caused pre-mortem but did not develop until post-mortem. The defense asserted the argument that the bruising was caused by resuscitation efforts.

. This specific reference relates to testimony from the waitress that Mary had attempted to order cheesy bread or bread sticks and that Larry denied that request.