143 P.3d 400

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Lorelei McMURRY, Defendant–Appellant.**

No. 32045.

Court of Appeals of Idaho.

Aug. 21, 2006.

Molly J. Huskey, State Appellate Public Defender; Justin M. Curtis, Deputy Appellate Public Defender, Boise, for appellant. Justin M. Curtis argued.

Hon. Lawrence G. Wasden, Attorney General; Courtney E. Beebe, Deputy Attorney General, Boise, for respondent. Courtney E. Beebe argued.

GUTIERREZ, Judge.

Lorelei McMurry appeals from her judgment of conviction for aggravated battery. She asserts that the district court erred by not declaring a mistrial after the prosecutor commented on her failure to testify. We vacate the judgment of conviction and remand.

## I.

## BACKGROUND

On December 21, 2004, Lorelei McMurry ran barefoot in her pajamas through the snow from Rodney Sorter's house to Daniel Evans' house and began pounding on the door. She exclaimed that she had "shot him" with a "big gun." Evans noticed that McMurry's face was swollen and that she had been drinking. Police officers arrived at Sorter's house and observed a stab wound in Sorter's chest. The house was in disarray and there was blood in the bedroom, bathroom, kitchen and on the ceiling. Officers also discovered that McMurry had a black eye, lumps and bruises on her face, red marks around her neck and a stab wound in her thigh.

When she was questioned by the police, McMurry stated that she could not remember much because she and Sorter had received several gallons of whiskey for Christmas and had been drinking heavily and smoking marijuana all day and night. Sorter agreed that he and McMurry had been drinking a lot since breakfast. Initially, Sorter told detectives that he had fallen on the knife. Ultimately, McMurry was charged with felony aggravated battery for stabbing Sorter.

At trial, Sorter testified that he and McMurry argued all the time and that McMurry stabbed him. Sorter testified that McMurry went to the kitchen and picked up a knife. Sorter said he told her to put the knife down before somebody got hurt, and

then he "got stabbed." Sorter could not recall exactly what had happened prior to the stabbing and he conceded that he too experienced alcoholic blackouts. Sorter also admitted he may have hit McMurry on that evening. A detective testified that Sorter's knuckles were skinned and that, in his opinion, Sorter should be charged with domestic battery.

McMurry claimed self-defense and offered photographs of her bruised body into evidence, but she chose not to testify at trial. During closing arguments at McMurry's trial, the prosecutor addressed the issue of self-defense, stating:

> There has been absolutely no evidence presented at any time by anybody that rebuts or otherwise is contrary to what's held in this instruction.
>
> . . . .
>
> There is no proof, there is no testimony, there is no evidence, but what the State has provided. There is nothing contrary to what the State has provided.
>
> . . . .
>
> And in this case *she* wants to have you believe that *she* was in fear of imminent danger of death or great bodily harm. And you know how *she* does that? *She* does that through the pictures.

(Emphasis added). McMurry's counsel objected, arguing that the prosecution improperly referred to her decision not to testify. The objection was overruled by the district court. The prosecution continued by telling the jury:

> There were count—several interviews with the defendant. She couldn't remember what happened. When she ran over to Mr. Evans' house she didn't say what happened, except for, I killed him. I killed him. I killed the dirty, rotten son of a bitch. That's what she said. *She never comes up with an explanation with the police.* All we know is what Mr. Sorter tells us. And he tells us that there was nothing going on at the time.

(Emphasis added). The jury found McMurry guilty of felony aggravated battery, I.C. §§ 18–903(a), 18–907(b), and this appeal followed from the judgment of conviction.

## II.

## DISCUSSION

■ The Fifth Amendment guarantees "[n]o person ... shall be compelled in any criminal case to be a witness against himself...." U.S. CONST. amend. V. A prosecutor may not therefore introduce evidence of the defendant's pre-arrest silence during a "custodial interrogation" or post-arrest silence for the purpose of inferring admission of guilt. *Miranda v. Arizona,* 384 U.S. 436, 467–68, 86 S.Ct. 1602, 1624–25, 16 L.Ed.2d 694, 719–20 (1966); *State v. Hodges,* 105 Idaho 588, 591, 671 P.2d 1051, 1054 (1983); *State v. White,* 97 Idaho 708, 714–15, 551 P.2d 1344, 1350–51 (1976). Similarly, neither a prosecutor nor a trial judge may comment to the jury on a defendant's failure to testify at trial. *Griffin v. California,* 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965).

■ The rule set forth in *Griffin* applies to direct and indirect comments on the failure to testify. *Hodges,* 105 Idaho at 592, 671 P.2d at 1055 (citing *People v. Jackson,* 28 Cal.3d 264, 168 Cal.Rptr. 603, 618 P.2d 149 (1980)). In *Hodges,* Idaho's highest court noted that the rule proscribing comment on a defendant's failure to testify "does not extend to comments on the state of the evidence or on the failure of the defense to introduce material evidence or to call logical witnesses." *Id.* Where the state's expert testified that the substance possessed by Hodges was cocaine and the prosecutor remarked that such evidence was uncontradicted, there simply was no implication that Hodges was *obligated* to take the witness stand in order to avoid an inference of guilt. *Id.* at 591–92, 671 P.2d at 1054–55. In this vein, Idaho follows the overwhelming number of jurisdictions holding that a prosecutor's general references to uncontradicted evidence do not necessarily reflect on the defendant's failure to testify, where *witnesses other than the defendant* could have contradicted the evidence. *See, e.g., Lincoln v. Sunn,* 807 F.2d 805, 810 (9th Cir.1987); *Raper v. Mintzes,* 706 F.2d 161, 164 (6th Cir.1983). Even so, prosecutorial comments on the lack of contradicting defense evidence may *necessarily*

result in an indirect *Griffin* violation depending on the number and nature of those comments. *See id.* Courts uniformly condemn this prosecutorial tactic due to the difficulty of determining whether *Griffin* violations are constitutionally harmless. *See, e.g., United States v. Castillo,* 866 F.2d 1071, 1084 (9th Cir.1989).

 Looking at the comments in context, including the likely effect of any curative instruction, we must decide "whether the language used was manifestly intended or was of such character that the jury would *naturally and necessarily* take it to be a comment on the failure of the accused to testify." *State v. Wright,* 97 Idaho 229, 232, 542 P.2d 63, 66 (1975). (Emphasis added). Although a prosecutor may not intend an inference of guilt, sufficiently ambiguous language indicates indirect *Griffin* error under the objective portion of this test. *People v. Vargas,* 9 Cal.3d 470, 108 Cal.Rptr. 15, 509 P.2d 959, 963 (1973). An "inference on inference," however, does not naturally or necessarily make an indirect comment on defendant's silence. *See State v. Rawlings,* 121 Idaho 930, 934, 829 P.2d 520, 524 (1992).

 Comment on the absence of evidence contradicting the state's case is particularly problematic where the defendant is the *sole witness* who would be able to contradict the evidence in question. While we have not previously addressed this situation in Idaho, courts generally hold that such comment in this context is improper. *See, e.g., People v. Hughes,* 27 Cal.4th 287, 116 Cal.Rptr.2d 401, 39 P.3d 432, 487 (2002); *see generally,* J. Evans, Annotation, *Comment or Argument by Court or Counsel that Prosecution Evidence is Uncontradicted as Amounting to Improper Reference to Accused's Failure to Testify,* 14 A.L.R 3d 723, II. § 4 (1967). Nevertheless, a prosecutor may rebut defense counsel's arguments and defenses. In so doing, "the line between a legitimate rebuttal of the defense arguments and an indirect comment on the fact that the defendant has not taken the stand is often a very thin one." *United States v. Harris,* 627 F.2d 474, 476 (D.C.Cir.1980).

 Here, McMurry specifically challenges three comments made by the prosecutor during closing arguments:

> The issue here was it self-defense. And that really is where the argument is going to come in. I will note that all the elements that are listed here, the date, the place, the defendant, the victim and the act, and the instrument are all contained [in] the instruction. *There has been absolutely no evidence presented at any time by anybody that rebuts or otherwise is contrary* to what's held in this instruction.

(Emphasis added)

> . . . .

> And the testimony of Mr. Sorter was, I walked into the kitchen. I think I was going to get a drink. She was handling the knife. And he says something to the effect of, you know, put that thing away.... *There is no proof, there is no testimony, there is no evidence, but what the State has provided. There is nothing contrary to what the State has provided.*

> . . . .

> *And in this case she wants to have you believe that she was in fear of imminent danger of death or great bodily harm. And you know how she does that? She does that through the pictures.* And that's why when they were admitted they were handed to you so you could all sit there and look at them and every one of you, and I was watching you, and your eyes kind of went, wow, those are black eyes.

(Emphasis added). A prosecutor's use of words implying the requirement of a personal response by the accused, is a factor in determining whether a prosecutor's comments refer to defendant's failure to take the stand and deny any guilt. *See Vargas,* 108 Cal.Rptr. 15, 509 P.2d at 962–63 ("Any witness could 'explain' the facts, but only defendant himself could 'deny' his presence at the crime scene."). The totality of the prosecutor's comments did not merely focus on legitimate rebuttal of the photographs and any other evidence whereby the jury might infer justifiable self-defense. Instead, the prosecutor's overarching theme suggested that the jury should infer guilt from McMurry's deci-

sion to present evidence without venturing upon the witness stand.

█ After making the three comments above, which resulted in an objection by the defense but no curative instruction by the court, the prosecutor argued:

> There were count—several interviews with the defendant. She couldn't remember what happened. When she ran over to Mr. Evans' house she didn't say what happened, except for, I killed him. I killed him. I killed the dirty, rotten son of a bitch. That's what she said. *She never comes up with an explanation with the police.* All we know is what Mr. Sorter tells us. And he tells us that there was nothing going on at the time. Had there been earlier in the day? I don't know. Probably. Was it going on at the moment that it happened? No. Was she in imminent fear? *Did she think she had to do this to save herself from ultimate harm? No proof. Nothing.*

(Emphasis added). The prosecutor's unchallenged comment on the delayed assertion of McMurry's self-defense claim did more than simply refer to the state of the evidence or the failure of the defense to introduce material evidence. This additional comment reinforced the suggestion that McMurry's silence at trial was evidence of guilt. *See United States v. Barton,* 731 F.2d 669, 675 (10th Cir.1984) ("The prejudicial comments regarding [defendant's] silence at the time of his arrest tended to reinforce the prior remarks on failure to testify and to diminish the curative effect of the court's subsequent instruction."). Each time a prosecutor comments on the absence of contradicting defense evidence, it "further increase[s] the likelihood that the jury would draw an improper reference." *Raper,* 706 F.2d at 167.

█ McMurry's decision not to be a witness means that the prosecutor may not profess a duty for McMurry to testify in support of her self-defense claim. As the *Griffin* Court indicates:

> The [Fifth Amendment] was framed with due regard also to those who might prefer to rely upon the presumption of innocence which the law gives to every one, and not wish to be witnesses. It is not every one

who can safely venture on the witness stand, though entirely innocent of the charge against him. Excessive timidity, nervousness when facing others and attempting to explain transactions of a suspicious character, and offenses charged against him, will often confuse and embarrass him to such a degree as to increase rather than remove prejudices against him. It is not every one, however honest, who would therefore willingly be placed on the witness stand.

*Griffin,* 380 U.S. at 613, 85 S.Ct. at 1232, 14 L.Ed.2d at 109. We hold, therefore, that the prosecutor violated McMurry's constitutional privilege against self-incrimination by commenting on her decision not to testify at trial. The standard jury instruction explaining that no inferences of guilt may be drawn from defendant's decision not to testify is a mitigating circumstance insufficient to cure the *Griffin* violations that occurred here.

█ If this constitutional violation had not occurred, the outcome of McMurry's trial might have been different. McMurry presented strong evidence as to the self-defense claim. Besides the evidence of Sorter's questionable memory about the sequence of events, there was evidence of McMurry's badly bruised face, a stab wound in her thigh and four years of domestic violence. In addition, there was evidence that Sorter had skinned knuckles, suggesting he had recently punched something or someone. The state's evidence to rebut the self-defense claim was not overwhelming. Sorter, the only other person in the room at the time of the stabbing, testified that he was unable to recall most of what happened during that day and that he suffered blackouts from drinking in excess. Sorter acknowledged that both he and McMurry were drinking heavily and were prone to argue. Sorter testified that he may have hit McMurry that evening, but could not remember.

After examining the record, we cannot conclude that the guilty verdict rendered in McMurry's trial was surely unattributable to the prosecutor's argument that her silence was an indication of guilt. Accordingly, the *Griffin* violation was not without harm.

### III.

### CONCLUSION

McMurry's Fifth Amendment privilege against self-incrimination was violated by the prosecutor's comment on her failure to testify. Given the weakness of state's evidence to rebut McMurry's self-defense claim, we cannot say beyond a reasonable doubt that the jury would have reached the same result absent the *Griffin* error. We therefore vacate McMurry's judgment of conviction and remand for a new trial.

Chief Judge PERRY and Judge LANSING concur.