IN THE COURT OF APPEALS OF THE STATE OF IDAHO
Docket No. 38009

| STATE OF IDAHO, | ) | |
| --- | --- | --- |
| | ) | 2012 Opinion No. 5 |
| Plaintiff-Respondent, | ) | |
| | ) | Filed: January 24, 2012 |
| v. | ) | |
| | ) | Stephen W. Kenyon, Clerk |
| DWAIN K. WHITAKER, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

Appeal from the District Court of the Fifth Judicial District, State of Idaho, Twin Falls County. Hon. Randy J. Stoker, District Judge.

Judgment of conviction for lewd conduct and sexual abuse of a child, <u>affirmed</u>.

Sara B. Thomas, State Appellate Public Defender; Spencer J. Hahn, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Mark W. Olson, Deputy Attorney General, Boise, for respondent.
_____

LANSING, Judge

Dwain K. Whitaker appeals from his judgment of conviction on eleven counts of lewd conduct with a minor child under sixteen, Idaho Code § 18-1508, and three counts of sexual abuse of a child under the age of sixteen, I.C. § 18-1506. Whitaker asserts the district court erred in overruling his objection to evidence that he viewed pornography on his computer and that the prosecutor committed misconduct in closing arguments.

## I.

## BACKGROUND

Whitaker was indicted on thirteen counts of lewd conduct with a minor and four counts of sexual abuse for inappropriate sexual contact with his two stepdaughters between 2007 and 2009. The lewd conduct charges included allegations of genital-to-genital contact and manual-to-genital contact. At the time of trial in 2010, Victim 1 was fifteen years old, and Victim 2 was fourteen. Victim 1 testified that Whitaker showed her pornography, touched her inappropriately,

1

and forced her to touch him. Victim 2 testified that Whitaker had shown her pornography, forced her to touch him, and had sexual intercourse with her. A jury found Whitaker guilty of eleven counts of lewd conduct, and three counts of sexual abuse. Whitaker appeals, contending that the trial court erroneously admitted evidence and that the prosecutor engaged in misconduct during closing argument.

## II.

## ANALYSIS

### A.    The Trial Court Erred in Admitting I.R.E. 404(b) Evidence

At trial, Whitaker's wife testified that at some point from 2007 to 2009, she had seen Whitaker view pornography on his computer. Defense counsel objected on various grounds, including that this was "other act" evidence of character and propensity made inadmissible by Idaho Rule of Evidence 404(b) and that the State had provided no pretrial notice of its intent to use such evidence as required by that rule. The district court overruled the objections, concluding that the testimony was not subject to Rule 404(b) because it was not unlawful for Whitaker to possess or view adult pornography.

The evidence rule in question, I.R.E. 404(b), provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that the prosecution in a criminal case shall file and serve notice reasonably in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

This rule prohibits introduction of evidence of acts other than the crime for which a defendant is charged if its probative value is "entirely dependent upon its tendency to demonstrate the defendant's propensity to engage in such behavior." *State v. Grist*, 147 Idaho 49, 54, 205 P.3d 1185, 1190 (2009). *See also State v. Avila*, 137 Idaho 410, 412, 49 P.3d 1260, 1262 (Ct. App. 2002). Of course, evidence of a prior crime, wrong, or act may implicate a person's character while also being relevant and admissible for some permissible purpose, such as those listed in the rule.

When determining the admissibility of evidence to which a Rule 404(b) objection has been made, the trial court must first determine whether there is sufficient evidence of the prior

2

acts that a reasonable jury could believe the conduct actually occurred. If so, then the court must consider: (1) whether the prior acts are relevant to a material disputed issue concerning the crime charged, other than propensity; and (2) whether the probative value is substantially outweighed by the danger of unfair prejudice. *Grist*, 147 Idaho at 52, 205 P.3d at 1188; *State v. Parmer*, 147 Idaho 210, 214, 207 P.3d 186, 190 (Ct. App. 2009). On appeal, this Court defers to the trial court's determination that there is sufficient evidence of the prior misconduct if it is supported by substantial and competent evidence in the record. *Parmer*, 147 Idaho at 214, 207 P.3d at 190. We exercise free review, however, of the trial court's relevancy determination. *State v. Sheldon*, 145 Idaho 225, 229, 178 P.3d 28, 32 (2008); *State v. Scovell*, 136 Idaho 587, 590, 38 P.3d 625, 628 (Ct. App. 2001). The trial court's balancing of the probative value of the evidence against the danger of unfair prejudice will not be disturbed unless we find an abuse of discretion. *Grist*, 147 Idaho at 52, 205 P.3d at 1188; *Scovell*, 136 Idaho at 590, 38 P.3d at 628.

Here, the district court held that the Rule 404(b) constraints did not apply to the challenged testimony of Whitaker's wife because viewing pornography is not a criminal offense. That is, the district court interpreted Rule 404(b) as applying only to evidence of other criminal behavior. In this the court erred for the rule, by its literal terms, applies to not only "other crimes," but also other "*wrongs* or *acts*." Although Rule 404(b) has its genesis in the common law rule that "the doing of a criminal act, not part of the issue, is not admissible as evidence of the doing of the criminal act charged," *Grist*, 147 Idaho at 52, 205 P.3d at 1188 (citing WIGMORE, CODE OF EVIDENCE 81 (3d ed.)), the rule expands this evidentiary bar beyond evidence of other crimes. The inclusion of the words "wrongs or acts" prohibits evidence of conduct beyond criminal offenses if it is proffered for the purpose of showing a person's character and conforming behavior.

Under a narrow interpretation, the term "wrong" may refer to a civil wrong, which is defined as: "A violation of noncriminal law, such as a tort, a breach of contract or trust, a breach of statutory duty, or a defect in performing a public duty." BLACK'S LAW DICTIONARY 1643 (8th ed. 2004) (under "wrong"). Commentators have suggested that the exclusion of the word "civil" from the rule may indicate that the drafters of the rule intended the word "wrongs" to broadly include "any sort of conduct that is likely to reflect adversely on the person in the eyes of the jury even though it has not been forbidden by the positive law." 22 CHARLES ALAN WRIGHT &

KENNETH W. GRAHAM, JR, FEDERAL PRACTICE & PROCEDURE: EVIDENCE § 5239, p. 456 (1978).

The word "acts" as used in Rule 404(b) is also subject to multiple interpretations:

> First, it can be argued that the phrase "other acts" is intended to cover the same ground as the expression "specific instances of conduct" in Rule 405(b). Under this interpretation, "other acts" would include any conduct, good or bad, that tended to show the character of the person involved. A second possibility is to read "other acts" in the light of the other two categories in Rule 404(b); that is, other acts are excluded only if they resemble "crimes" or "wrongs." . . . On this theory, the intent of the Advisory Committee was to reinstate the ancient common law rule permitting the use of evidence of good acts. Finally, it can be argued that "other acts" was intended to be broader than the phrase "specific instances of conduct" in Rule 405(b), perhaps in the belief that the language of Rule 405 did not encompass such acts as speaking.

*Id.* at 456-57 (footnotes omitted).

Although Idaho appellate courts have commonly used the terms "prior bad acts evidence" or "other bad acts evidence" as shorthand to refer to evidence governed by Rule 404(b), we have noted that the rule is not limited to "bad" acts.[1] *State v. Norton*, 151 Idaho 176, 190, 254 P.3d 77, 91 (Ct. App. 2011). We have also held, however, that if the evidence does not bear upon the defendant's character, it is not subject to I.R.E. 404(b).[2] *Id.* In *Norton*, the defendant was on trial for arson and sought exclusion of evidence that she had previously experienced a house fire and collected insurance. We held that evidence that Norton's house had burned and that she received insurance, without any evidence that the fire was caused by arson, did not implicate her character; and therefore was not excluded by Rule 404(b). *Id.* at 190, 254 P.3d at 91.

In the present case, the State concedes on appeal that evidence of Whitaker's pornography viewing could have been perceived by a jury as reflecting negatively on his character. We agree. This evidence, while not evincing criminality, could be used to demonstrate poor character.

The State, citing *Sheldon*, 145 Idaho at 228, 178 P.3d at 31, contends that admission of the evidence was nevertheless proper because I.R.E. 404(b) "does not extend to evidence of acts which are intrinsic to the charged offense." According to the State, the evidence that Whitaker

---

[1] Nor does anything in the rule limit its applicability to "prior" acts.

[2] In acting upon Whitaker's objection to this evidence, the district court did not have the benefit of our decision in *Norton*, which was issued after Whitaker's trial.

viewed pornography was intrinsic to the allegations that he showed pornography to the victims. This contention is without merit. "Evidence of an act is intrinsic when it and evidence of the crime charged are inextricably intertwined, or both acts are part of a single criminal episode, or it was a necessary preliminary to the crime charged." *Sheldon*, 145 Idaho at 228, 178 P.3d at 31 (quoting *United States v. Sumlin*, 489 F.3d 683, 689 (5th Cir. 2007). Evidence is inextricably intertwined when it is "so interconnected with the charged offense that a complete account of the charged offense could not be given to the jury without disclosure of the uncharged misconduct." *Avila*, 137 Idaho at 413, 49 P.3d at 1263. *See also State v. Izatt*, 96 Idaho 667, 670, 534 P.2d 1107, 1110 (1975); *State v. Blackstead*, 126 Idaho 14, 17-18, 878 P.2d 188, 191-92 (Ct. App. 1994). Whitaker's viewing pornography on some occasion entirely separate from the charged offenses was not part of the charged criminal episode, nor was it necessary in order to provide a complete account of the charged crimes. Because the evidence implicated Whitaker's character and was not intrinsic to the crimes charged, it is subject to the strictures of Rule 404(b).

Such evidence may be admitted for a permissible purpose in a criminal case only if the prosecution has "file[d] and serve[d] notice reasonably in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial." I.R.E. 404(b). This notice requirement is mandatory, and the failure to comply creates a bar to admissibility. *Sheldon*, 145 Idaho at 230, 178 P.3d at 33.

The State asserts that lack of formal notice should be excused here because Whitaker was on notice that the State would introduce evidence that Whitaker had pornography "on his computer" through allegations in the information, the victim's preliminary hearing testimony, and "likely the discovery materials." However, the charging allegations and preliminary hearing testimony referred to the charged criminal acts, not the "other" acts to which objection was made at trial, and we will not speculate about the content of discovery responses that are not in the record. The State here did not "file and serve notice or show good cause for the court to excuse this requirement." I.R.E. 404(b). Consequently, the evidence was inadmissible.

Because we conclude that the evidence was inadmissible for lack of notice under Rule 404(b), we do not reach the issues of its relevance for a permissible purpose or the balancing of probative value against unfair prejudice.

5

**B.     Prosecutorial Misconduct Occurred**

Whitaker next asserts that his trial was infected with fundamental error when the prosecutor, during the rebuttal closing argument, made veiled references to Whitaker's choice to not testify at trial.  The prosecutor's comments were as follows:

> It's important to note that [defense counsel] was not able to impeach [Victim 2] about anything she said about Dwain Whitaker.  He may not agree with her, but that's not impeachment.  The evidence is *uncontroverted* that Dwain Whitaker put his naked penis in [Victim 2]'s vagina.  Now [Victim 2] was in her room.  She was in his room.  She was in the bathroom.  She was in the motor home on Quincy.  She was in the motor home on Monroe.  I asked you at the very beginning, listen to how the defense explains away the allegations.  I asked you, how do you explain that away?
>
> There is no history in the prior medical history of [Victim 2] that there was any kind of trauma, that she had been injured in any way in her vaginal area.  There is *uncontroverted* evidence that Dwain Whitaker showed her pornography in the basement TV room, as well as in the front room. . . .
>
> It's *uncontroverted* that Dwain Whitaker had sexual contact with [Victim 1].  [Victim 1]'s testimony is that he touched her with his bare penis at night because, you remember, she was asleep. . . .
>
> There is *no controverted* evidence that this did not happen in her bedroom or that it happened in his room.  The evidence is *uncontroverted* that she was shown pornography in the bathroom.  One of those times when he was showing her pornography, do you remember what he did?  He began to masturbate until he ejaculated.  The evidence is *uncontroverted* that he had [Victim 1] touch his penis and that when she would do that he would move her hand up and down, that he would ejaculate.  [Victim 1] was not inconsistent in her testimony either.  She didn't change her testimony in any way.

(emphasis added).

Whitaker argues that the prosecutor's repeated reference to the victims' testimony as "uncontroverted" constituted a comment on his exercise of his Fifth Amendment right not to testify.  Although Whitaker made no objection at trial to the prosecutor's statements, he contends that this claimed violation of his constitutional right not to testify should be reviewed on appeal as fundamental error.

The Idaho Supreme Court has recently stated that to obtain relief on appeal for fundamental error:

> (1) the defendant must demonstrate that one or more of the defendant's unwaived constitutional rights were violated; (2) the error must be clear or obvious, without the need for any additional information not contained in the appellate record, including information as to whether the failure to object was a

6

tactical decision; and (3) the defendant must demonstrate that the error affected the defendant's substantial rights, meaning (in most instances) that it must have affected the outcome of the trial proceedings.

*State v. Perry*, 150 Idaho 209, 226, 245 P.3d 961, 978 (2010) (footnote omitted). If the alleged error satisfies the first two elements of the *Perry* test, the error is reviewable. *Id.* To obtain appellate relief, however, the defendant must further persuade the reviewing court that the error was not harmless; i.e., that there is a reasonable possibility that the error affected the outcome of the trial and thereby prejudiced the defendant.

Whitaker maintains that the first prong of the *Perry* test is satisfied here because the prosecutor's comments violated the Fifth Amendment guarantee that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. This constitutional safeguard forbids prosecutorial comments to the jury on a defendant's failure to testify at trial. *Griffin v. California*, 380 U.S. 609, 615 (1965). It encompasses both direct and indirect references to the choice not to testify. *State v. Hodges*, 105 Idaho 388, 392, 671 P.2d 1051, 1055 (1983); *State v. McMurry*, 143 Idaho 312, 314, 143 P.3d 400, 402 (Ct. App. 2006). However, we will not "lightly infer that a prosecutor intends an ambiguous remark to have its most damaging meaning or that a jury, sitting through lengthy exhortation, will draw that meaning from the plethora of less damaging interpretations." *State v. Severson*, 147 Idaho 694, 719, 215 P.3d 414, 439 (2009) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 647 (1974)). Rather, we examine "whether the language used was manifestly intended or was of such character that the jury would *naturally* and *necessarily* take it to be a comment on the failure of the accused to testify. *McMurry*, 143 Idaho at 315, 143 P.3d at 403 (quoting *State v. Wright*, 97 Idaho 229, 232, 542 P.3d 63, 66 (1975)).

A prosecutor's general references to uncontradicted evidence do not necessarily refer to the absence of testimony from the defendant if witnesses other than the defendant could have contradicted the evidence. *McMurry*, 143 Idaho at 314, 143 P.3d at 402. Thus, in *Hodges*, our Supreme Court held that the defendant's privilege against self-incrimination was not violated when the prosecutor commented on an expert's "uncontradicted" testimony that a substance was cocaine because the defendant was not the only logical witness who could have disputed the expert's testimony. *Hodges*, 105 Idaho at 591-92, 671 P.2d at 1054-55. However, a prosecutor's use of words implying a requirement of a personal response by the accused may reflect upon the defendant's failure to take the stand and deny guilt. *McMurry*, 143 Idaho at 315, 143 P.3d at

7

403. In *McMurry*, we held that the defendant's Fifth Amendment privilege was violated by the prosecutor's comments on the absence of any evidence contradicting the victim's testimony about actions that allegedly occurred when only the victim and the defendant were present. *Id.* In this case, the prosecutor asked the jury to consider that the victims' testimony was "uncontroverted" concerning events that occurred when only Whitaker and one of the girls were present. Thus, the prosecutor's comments implicated Whitaker's Fifth Amendment privilege.

The number of the prosecutor's allusions to the absence of testimony from the defendant is significant in ascertaining whether there has been a *Griffin* violation. As the Sixth Circuit Court of Appeals said in *Raper v. Mintzes*, 706 F.2d 161, 167 n.5 (6th Cir. 1983), "We do not suggest that any magic number will constitute a violation of *Griffin* but the number of comments, along with their nature, is a key factor." In *McMurry*, we found a *Griffin* violation where the prosecutor made at least four indirect comments upon the defendant's failure to testify or provide an explanation to the police who investigated the charged offense. *McMurry*, 143 Idaho at 315-16, 143 P.3d at 403-04. In Whitaker's trial, the prosecutor's rebuttal closing argument used the term "uncontroverted" or a similar phrase six times when referring to testimony that only Whitaker could have contradicted.

Contrary to the State's contentions, the context in which these comments were made does not justify nor ameliorate the impermissible allusion to Whitaker's failure to deny guilt on the witness stand. The State's assertion that the prosecutor's comments were merely rebuttals to defense counsel's argument that the victims' testimony was internally inconsistent and lacking in credibility is not borne out by the content of the prosecutor's statements. The challenged portion of the prosecutor's argument was not disputing alleged inconsistencies nor drawing the jury's attention to consistencies within the victims' testimony; it was referring to the absence of any controverting testimony, which could have been given only by Whitaker. We therefore conclude that Whitaker has satisfied his burden to show that the prosecutor's argument violated an unwaived constitutional right and that the error is clear or obvious, thereby meeting the first two prongs of the *Perry* test for reversible fundamental error. It remains for us to determine whether the error affected the outcome of the trial.

## C.    The Trial Errors Were Harmless

Whitaker has demonstrated a preserved error from the admission of evidence in violation of I.R.E. 404(b) and a reviewable instance of prosecutorial misconduct to which no objection

8

was made in the trial court. Error is not reversible, however, unless it is prejudicial. *State v. Stoddard*, 105 Idaho 169, 171, 667 P.2d 272, 274 (Ct. App. 1983). With limited exceptions, even constitutional error may be harmless. *Id.* Under the doctrine of cumulative error, a series of errors, harmless in and of themselves, may in the aggregate show the absence of a fair trial. *Perry*, 150 Idaho at 230, 245 P.3d at 982; *State v. Martinez*, 125 Idaho 445, 453, 872 P.2d 708, 716 (1994). We are cognizant of the differing burdens of persuasion for preserved and unpreserved error. If a defendant has established that an objected-to error occurred, the State has the burden of demonstrating that the error is harmless beyond a reasonable doubt.[3] *Perry*, 150 Idaho at 222, 245 P.3d at 974. However, where a defendant seeks relief for a constitutional violation to which no objection was made in the trial court, the defendant bears the burden of showing a reasonable possibility that the error affected the outcome of the trial. *Id.* at 226, 245 P.3d at 978.

Whether trial errors could have affected the outcome of a trial generally depends, in part, upon the strength of the properly admitted evidence of guilt. In this case, the evidence of Whitaker's guilt came from the testimony of the two victims and a medical expert. Victim 1 said that Whitaker touched her chest and vagina with his hands or his penis, and made her touch his penis. She described various specific instances of touching occurring in the bathroom, her bedroom, her parent's bedroom, or Whitaker's nearby motor home. She said that on two occasions, Whitaker showed her pornography and masturbated in her presence. Victim 2 testified that Whitaker had intercourse with her more than twenty times beginning when she was in the third or fourth grade. She described instances of intercourse occurring in her bedroom, her closet, her mother's bedroom, the bathroom, and Whitaker's motor home. She indicated that

---

[3]    In *Sheldon*, the Supreme Court stated that where the admission of I.R.E. 404(b) evidence was erroneous due to lack of the requisite notice, the harmless error inquiry is whether prejudice was caused by the content of the evidence rather than by the lack of notice. However, the Court apparently continued to consider the harm from lack of notice, stating that appellate counsel "listed a number of things that the defense would have done differently, had it been known that the statements were to be offered in evidence." *Sheldon*, 145 Idaho at 231, 178 P.3d at 34. Here, defense counsel has not identified anything that would have been done differently if the defense had received notice of the State's intent to use the Rule 404(b) evidence. Nevertheless, we heed the *Sheldon* decision's holding that prejudice is to be gauged from the content of the evidence.

Whitaker also placed her hand on his penis on various occasions. Victim 2 also testified that Whitaker showed her pornography more than twenty times.

The victims provided partial corroboration of one another's allegations, and a medical expert also provided corroboration. Victim 1 testified that she witnessed Whitaker acting suspicious in the closet with Victim 2. Victim 2 testified that she "caught" Whitaker and Victim 1 on one occasion when she opened the door to her bedroom to find Whitaker kneeling next to Victim 1 on the bed. She said that Whitaker looked surprised to see her and opened his robe to block her view. Both victims were examined by a certified pediatric nurse. Consistent with Victim 2's allegations of intercourse, the nurse testified that Victim 2 had an internal scar from injury that could only have been caused by vaginal penetration. She also noted that both girls tested positive for gardnerella, a vaginal bacteria which, she explained, is more common in sexually active teens. Although the nurse acknowledged that gardnerella may be present without a history of sexual activity, she said that "having both girls have it, it kind of collaborates [sic] their story because these exams were done independently. . . . And in sexually active girls we do see [g]ardnerella, so it is a collaborating [sic] piece of evidence." In comparison to this compelling evidence of guilt, the improperly admitted testimony of Whitaker's wife concerning his viewing of pornography was brief and cursory.

Whitaker's defense strategy consisted of attempting to discredit the victims' testimony through argument of counsel, but without any evidence of a motive or explanation for why they would falsely accuse Whitaker. Defense counsel suggested the girls' demeanor was indicative of untruthfulness, and that their testimony was unclear on minor details and did not "make sense" because the victims alleged acts by Whitaker that carried a very high risk of getting caught. Notably, however, defense counsel was not able to point to any direct contradictions in the testimony. Defense counsel also speculated about reasons why the girls may have made up allegations of abuse, such as retaliation for discipline or attention seeking, but without supporting evidence; and to explain the medical testimony, counsel speculated that the girls may have been sexually active with other males.

After a review of all the evidence and arguments, we are convinced beyond a reasonable doubt that the cumulative effect of the improperly admitted evidence and the prosecutor's impermissible comments did not contribute to the jury's verdict. The errors are harmless, whether viewed independently or cumulatively.

**III.**

**CONCLUSION**

The district court erred by admitting testimony that Whitaker viewed pornography on occasions other than the charged offenses as the State had not given notice of its intent to use such evidence, and the prosecutor's repeated comments that testimony from the victims was uncontroverted violated Whitaker's Fifth Amendment right not to testify. However, these errors were harmless beyond a reasonable doubt. Therefore, the judgment of conviction is affirmed.

Judge GUTIERREZ and Judge MELANSON **CONCUR.**

11