**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 39529**

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | 2014 Opinion No. 23 |
| | ) | |
| Plaintiff-Respondent, | ) | Filed: March 26, 2014 |
| | ) | |
| v. | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| VALENTIN CALVILLO, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

Appeal from the District Court of the Fifth Judicial District, State of Idaho, Twin Falls County. Hon. G. Richard Bevan, District Judge.

Judgment of conviction for seven counts of lewd conduct with a minor child under sixteen, and one count of sexual abuse of a child under the age of sixteen, <u>affirmed</u>.

Sara B. Thomas, State Appellate Public Defender; Sarah E. Tompkins, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Nicole L. Schafer, Deputy Attorney General, Boise, for respondent.

_____

GRATTON, Judge

Valentin Calvillo appeals from his judgment of conviction for seven counts of lewd conduct with a minor child under sixteen, Idaho Code § 18-1508, and one count for sexual abuse of a child under the age of sixteen, I.C. § 18-1506. We affirm.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

Following an investigation, Calvillo was charged with sexually abusing a ten-year-old girl (C.V.). The State charged him with eight counts of lewd conduct and two counts of sexual abuse of a minor. When the trial began, Calvillo's attorney told the jury that C.V. had a motive to lie and that Calvillo would testify. The State's first witness was C.V.'s sister. She testified that when C.V. first described the abuse she was upset and crying. C.V.'s mother, who was dating Calvillo at the time of the reported abuse, testified that Calvillo had contacted her several

1

times and asked for forgiveness for hurting her. She also testified that Calvillo denied the alleged charges and did not admit to any inappropriate conduct with C.V. Several officers, forensic interviewers, and social workers also testified. These witnesses were offered to explain to the jury the specialized investigative process in child abuse cases and to show that Calvillo received the benefit of a full investigation. A nurse practitioner testified that a physical exam revealed no signs of sexual abuse. However, she also testified that a high majority of sexual abuse victims show no signs of abuse. C.V. testified to numerous acts of sexual abuse committed by Calvillo.

The day after C.V. testified, Calvillo did not return to court. He told his attorney he was ill. At a hearing conducted in his absence, the court dismissed one count of sexual abuse. The Court released the jury for the day and afforded Calvillo the opportunity to return to court the next morning. Calvillo absconded and failed to appear in court. After a hearing on the issue, the court found his absence was voluntary and the trial continued.[1] The court instructed the jury not to consider Calvillo's presence or absence while deliberating and later instructed the jury not to draw any inference of guilt from the fact that he did not testify. During closing argument, on several occasions the prosecutor referenced C.V.'s testimony as "uncontroverted." Calvillo's attorney did not object and presented no closing argument. The jury found Calvillo guilty of seven counts of lewd conduct with a minor and one count of sexual abuse of a minor. The jury could not reach a decision on one of the lewd conduct charges. Calvillo timely appeals.

## II.

## ANALYSIS

Generally, issues not raised below may not be considered for the first time on appeal. *State v. Fodge*, 121 Idaho 192, 195, 824 P.2d 123, 126 (1992). Idaho decisional law, however, has long allowed appellate courts to consider a claim of error to which no objection was made below if the issue presented rises to the level of fundamental error. *See State v. Field*, 144 Idaho 559, 571, 165 P.3d 273, 285 (2007); *State v. Haggard*, 94 Idaho 249, 251, 486 P.2d 260, 262 (1971). In *State v. Perry*, 150 Idaho 209, 245 P.3d 961 (2010), the Idaho Supreme Court abandoned the definitions it had previously utilized to describe what may constitute fundamental

---

[1] Calvillo was eventually arrested months later in California after he had been returned from Mexico by his bonding company. Calvillo has not challenged the court's finding that his absence from trial was voluntary.

2

error. The *Perry* Court held that an appellate court should reverse an unobjected-to error when the defendant persuades the court that the alleged error: (1) violates one or more of the defendant's unwaived constitutional rights; (2) is clear or obvious without the need for reference to any additional information not contained in the appellate record; and (3) affected the outcome of the trial proceedings. *Id.* at 226, 245 P.3d at 978.

Calvillo argues that the prosecutor's references to C.V.'s "uncontroverted" testimony were an indirect comment on his right to remain silent. The Fifth Amendment of the United States Constitution guarantees that "No person . . . shall be compelled in any criminal case to be a witness against himself." U.S. CONST. amend. V. The Fifth Amendment forbids comments on the accused's failure to testify at trial. *Griffin v. California*, 380 U.S. 609, 615 (1965). This prohibition extends to both direct and indirect references to the defendant's choice not to testify. *State v. Severson*, 147 Idaho 694, 718, 215 P.3d 414, 438 (2009); *State v. McMurry*, 143 Idaho 312, 314, 143 P.3d 400, 402 (Ct. App. 2006). However, we will not "lightly infer that a prosecutor intends an ambiguous remark to have its most damaging meaning or that a jury, sitting through lengthy exhortation, will draw that meaning from the plethora of less damaging interpretations." *Severson*, 147 Idaho at 719, 215 P.3d at 439 (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 647 (1974)). Rather, we examine "whether the language used was manifestly intended or was of such character that the jury would *naturally* and *necessarily* take it to be a comment on the failure of the accused to testify." *McMurry*, 143 Idaho at 315, 143 P.3d at 403 (quoting *State v. Wright*, 97 Idaho 229, 232, 542 P.2d 63, 66 (1975)). In conducting this analysis, the comments are viewed "in light of defense conduct and in the context of the entire trial." *Severson*, 147 Idaho at 719, 215 P.3d at 439 (quoting *Lincoln v. Sunn*, 807 F.2d 805, 809 (9th Cir. 1987)). "A prosecutor's general references to uncontradicted evidence do not necessarily refer to the absence of testimony from the defendant if witnesses other than the defendant could have contradicted the evidence." *State v. Whitaker*, 152 Idaho 945, 951, 277 P.3d 392, 398 (Ct. App. 2012). However, repeated use of language implying a requirement of a personal response by the accused may reflect upon the defendant's failure to take the stand and deny guilt. *See id.* at 951-52, 277 P.3d at 398-99 (holding the prosecutor's use of the term "uncontroverted" or a similar phrase six times was improper because only the defendant could contradict the testimony); *McMurry*, 143 Idaho at 315-16, 143 P.3d at 403-04 (holding the State committed a *Griffin* violation where the prosecutor made three indirect comments relating to the

3

defendant's failure to testify and one comment about the failure to offer an explanation to investigating officers before trial).

Here, the prosecutor made the following comments in closing argument:

And what you heard from [C.V] was uncontroverted evidence that proves every one of these counts beyond a reasonable doubt.

. . . .

You've heard uncontroverted evidence from [C.V.] what this defendant did, and what he did was sexual abuse of a child. He's guilty of that.

. . . .

That's uncontroverted evidence of what that defendant did to her in the front seat of that car at the park, and that's for Count X, Instruction 28.

. . . .

That uncontroverted evidence proves this case beyond a reasonable doubt.

. . . .

[I]f you can recall that testimony, which has been uncontroverted, which proves that this defendant committed this crime.

. . . .

That uncontroverted evidence, which is entirely believable, after you watched her testify and say what she said during this trial, that proves this case, that count, beyond a reasonable doubt.

The prosecutor did not directly comment on Calvillo's absence or failure to testify.

In *Lockett v. Ohio*, 438 U.S. 586 (1978),[2] the United States Supreme Court reviewed a similar case where a prosecutor made repeated references to the State's unrefuted and uncontradicted evidence. During Lockett's opening statement, defense counsel summarized the planned defense, explaining how the evidence would show that Lockett was unaware of the planned robbery that led to a murder. Lockett's first two witnesses invoked their Fifth Amendment rights and refused to testify. Thereafter, Lockett's counsel informed the Court, in the presence of the jury, that Lockett was next to testify. After a short recess, counsel informed the Court that Lockett had planned on testifying, but changed her mind on advice from her mother. Lockett failed to present any evidence to rebut the State's case. During closing argument, the prosecutor made continued reference to the State's uncontested evidence.

Lockett argued that the prosecutor's statements unconstitutionally referenced her failure to testify. In holding that no constitutional violation occurred, the Court explained:

---

[2]     *Lockett v. Ohio*, 438 U.S. 586 (1978) is a plurality opinion in respect to part III. The portion of *Lockett* relied upon in this case, part II, received unanimous support from the Court.

4

Her first contention is that the prosecutor's repeated references in his closing remarks to the State's evidence as "unrefuted" and "uncontradicted" constituted a comment on her failure to testify and violated her Fifth and Fourteenth Amendment rights. *See Griffin v. California*, 380 U.S. 609, 615, 85 S. Ct. 1229, 1233, 14 L.Ed.2d 106 (1965). We conclude, however, that the prosecutor's closing comments in this case did not violate constitutional prohibitions. Lockett's own counsel had clearly focused the jury's attention on her silence, first, by outlining her contemplated defense in his opening statement and, second, by stating to the court and jury near the close of the case, that Lockett would be the "next witness." When viewed against this background, it seems clear that the prosecutor's closing remarks added nothing to the impression that had already been created by Lockett's refusal to testify after the jury had been promised a defense by her lawyer and told that Lockett would take the stand.

*Lockett*, 438 U.S. at 594-95.

Calvillo's counsel began opening statements by explaining that Calvillo had set up a bank account for C.V.'s brother because of his good behavior. The attorney then explained that Calvillo promised to setup an account for C.V. once she started acting more respectful at home. Calvillo's counsel contended that after improvement and weeks of asking to get an account, C.V. became frustrated and it was about this time that she brought forward the reports of abuse. The attorney went on to explain:

> [Calvillo] is going to take the stand, and he's going to look you in the eyes, and he's going to say--I mean, I don't know how strongly. He's going to be having a hard time to not just want to reach out and say, "Listen to me. I didn't touch this girl. What can I do to prove that? Other than to say, I didn't do it?"

Calvillo's attorney focused the jury's attention on his silence by first explaining to the jury that the evidence would show C.V. had a motive to fabricate the allegations and then by expressly telling the jury that Calvillo would testify.[3] As in *Lockett*, the prosecutor's closing remarks

---

[3]     Calvillo provided no defense. When Calvillo fled to Mexico his counsel explained to the judge:

> My whole strategy from preparing this case to presenting this case, through opening statement, through cross-examination or the lack of cross-examination, has been tragically [focused] on this developing as a she-says-it-happened-he-says-it-didn't. Without him, that whole strategy fails. The arguments fail. There's nothing to talk about. There's nothing to do. There's nothing to say. So he, by his absence, has hamstrung the whole defense.

Defense counsel did not attempt to discredit C.V., except as to where she may have heard of the word "penis" (arguing she learned about the word from a movie), and pointing to one incident

added nothing to the impression of the jury created by Calvillo not testifying after the jury had been promised a defense by his lawyer and told that Calvillo would take the stand.[4]  Therefore, the prosecutor's comments on the uncontested testimony did not violate Calvillo's constitutional rights under the Fifth Amendment.

## III.

## CONCLUSION

Calvillo has failed to show that the prosecutor's comments violated his constitutional rights.  Therefore, Calvillo's judgment of conviction is affirmed.

Judge LANSING and Judge MELANSON **CONCUR.**

---

where her testimony differed from what she told an interviewer prior to trial.  Immediately before closing arguments, the defense rested without presenting any evidence to attack C.V., and it was under these circumstances that the prosecutor referenced that the evidence was uncontroverted.  Calvillo's failure to testify and undermining of his defense was created by his own voluntary absence from trial.

[4]  Moreover, Lockett sat mum in front of the jury clearly leaving the impression she was exercising her right not to testify.  On the other hand, here Calvillo's failure to testify is at least as likely due to his unexplained absence as his right not to testify.

6