**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 44520**

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | 2018 Unpublished Opinion No. 315 |
| | ) | |
| Plaintiff-Respondent, | ) | Filed: January 9, 2018 |
| | ) | |
| v. | ) | Karel A. Lehrman, Clerk |
| | ) | |
| VALENTIN CALVILLO, | ) | THIS IS AN UNPUBLISHED |
| | ) | OPINION AND SHALL NOT |
| Defendant-Appellant. | ) | BE CITED AS AUTHORITY |
| | ) | |

Appeal from the District Court of the Fifth Judicial District, State of Idaho, Twin Falls County. Hon. John K. Butler, District Judge.

Judgment of conviction and sentence of thirty years with fifteen years determinate for one count of sexual abuse of a child and six counts of lewd conduct with a minor, affirmed.

Eric D. Fredericksen, State Appellate Public Defender; Jenny C. Swinford, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Kale D. Gans, Deputy Attorney General, Boise, for respondent.

_____

GRATTON, Chief Judge

Valentin Calvillo appeals from the district court's judgment of conviction entered upon a jury verdict finding him guilty of one count of sexual abuse of a child and six counts of lewd conduct with a minor. On appeal, he asserts the district court erred by denying his motion for mistrial based on allegedly prejudicial statements made by two prospective jurors in front of the entire jury venire. We affirm.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

In June 2010, a grand jury indicted Calvillo on eight counts of lewd conduct with a minor, Idaho Code § 18-1508, and two counts of sexual abuse of a child, I.C. § 18-1506. Calvillo pled not guilty and proceeded to trial.

1

Calvillo's first trial began in November 2010. On the third day of trial Calvillo absconded to Mexico and did not return. The trial continued without him, and in his absence the jury found him guilty of seven counts of lewd conduct with a minor and one count of sexual abuse of a child. In May 2011, Calvillo's bonding company returned him to the United States. Upon his return, the district court sentenced him to an aggregate thirty-year sentence with fifteen years determinate. Calvillo appealed. We affirmed the district court. *State v. Calvillo*, 156 Idaho 283, 323 P.3d 825 (Ct. App. 2014).

Calvillo then petitioned for post-conviction relief. The State stipulated that Calvillo's trial counsel had been ineffective because counsel failed to present any witnesses in Calvillo's defense and waived closing argument. The district court granted Calvillo's petition for post-conviction relief, vacated the jury verdict and judgment of conviction from the first trial, and ordered a new trial.

Calvillo's second trial on one count of sexual abuse of a child and seven counts of lewd conduct with a minor began in May 2016. During voir dire, the court inquired whether any potential juror had personal knowledge related to the case. In response, one prospective juror stated in front of the jury panel that she had "worked at the jail as a nurse while Mr. Calvillo was incarcerated." The court immediately excused her from the jury panel. Additionally, a second prospective juror responded that he had a professional relationship with Calvillo from "about 2008 until about the time he went missing." The court also excused him from the jury panel. Calvillo moved for mistrial based on the statements that Calvillo had been incarcerated and went missing, arguing the statements had infected the entire jury panel with information related to Calvillo's incarceration and with information that implied he ran from the charges because of a guilty conscience. The district court denied the motion, and the trial proceeded. The jury returned a guilty verdict on one count of sexual abuse of a child and six counts of lewd conduct with a minor. The jury acquitted Calvillo of one count of lewd conduct with a minor. Ultimately, the district court entered a judgment of conviction and sentenced Calvillo to an aggregate thirty-year sentence with fifteen years determinate. Calvillo timely appeals.

## II.

## ANALYSIS

### A. Our Standard of Review is Well Settled

In criminal cases, motions for mistrial are governed by Idaho Criminal Rule 29.1. A mistrial may be declared upon motion of the defendant, when there occurs during the trial an error or legal defect in the proceedings, or conduct inside or outside the courtroom, which is prejudicial to the defendant and deprives the defendant of a fair trial. I.C.R. 29.1(a). Our standard for reviewing a district court's denial of a motion for mistrial is well established:

> [T]he question on appeal is not whether the trial judge reasonably exercised his discretion in light of circumstances existing when the mistrial motion was made. Rather, the question must be whether the event which precipitated the motion for mistrial represented reversible error when viewed in the context of the full record. Thus, where a motion for mistrial has been denied in a criminal case, the "abuse of discretion" standard is a misnomer. The standard, more accurately stated, is one of reversible error. Our focus is upon the continuing impact on the trial of the incident that triggered the mistrial motion. The trial judge's refusal to declare a mistrial will be disturbed only if that incident, viewed retrospectively, constituted reversible error.

*State v. Urquhart*, 105 Idaho 92, 95, 665 P.2d 1102, 1105 (Ct. App. 1983).

As a preliminary matter, Calvillo asserts the long-standing standard of review blends the reversible error standard (that he equates to structural error) and the harmless error standard, which he contends is inconsistent with the more recent pronouncements in *State v. Perry*, 150 Idaho 209, 245 P.3d 961 (2010). Calvillo's main objection to the current standard is its focus on the entire context of the proceedings. According to Calvillo, prejudicial statements made during voir dire constitute structural defects in the trial because they undermine the defendant's right to a fair trial by an impartial jury, and thus he argues that the appropriate remedy is automatic reversal.

Structural defects are errors that affect the "framework within which the trial proceeds, rather than simply an error in the trial process itself." *Arizona v. Fulminante*, 499 U.S. 279, 310 (1991). These errors deprive defendants of basic protections without which "a criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence . . . and no criminal punishment may be regarded as fundamentally fair." *Rose v. Clark*, 478 U.S. 570, 577-78 (1986) (citations omitted). Because structural errors "infect the entire trial process," *Brecht v. Abrahamson*, 507 U.S. 619, 630 (1993), and "necessarily render a trial fundamentally unfair,"

*Rose*, 478 U.S. at 577, they are not subject to harmless error analysis, but require automatic reversal. *Perry*, 150 Idaho at 222, 245 P.3d at 974. Therefore, the appellate courts automatically vacate and remand where the error in question is a constitutional violation found to constitute a structural defect affecting the base structure of the trial to the point that a criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence. *Id.* at 227-28, 245 P.3d at 979-80.

The United States Supreme Court and the Idaho Supreme Court have recognized the following errors as structural defects that require automatic reversal: (1) complete denial of counsel (*Gideon v. Wainwright,* 372 U.S. 335 (1963)); (2) biased trial judge (*Tumey v. Ohio*, 273 U.S. 510 (1927)); (3) racial discrimination in the selection of a grand jury (*Vasquez v. Hillery*, 474 U.S. 254 (1986)); (4) denial of self-representation at trial (*McKaskle v. Wiggins*, 465 U.S. 168 (1984)); (5) denial of a public trial (*Waller v. Georgia*, 467 U.S. 39 (1984)); (6) defective reasonable-doubt instruction (*Sullivan v. Louisiana*, 508 U.S. 275 (1993)); and (7) erroneous deprivation of the right to counsel of choice (*United States v. Gonzalez-Lopez*, 548 U.S. 140 (2006)). *Perry*, 150 Idaho at 222-23, 245 P.3d at 974-75.

In *Perry*, the Supreme Court stated that as a general rule most constitutional violations are subject to the *Chapman*[1] harmless error analysis and do not require automatic reversal. *Perry*, 150 Idaho at 223, 245 P.3d at 975. Under *Chapman*, the appellant has the initial burden of showing that an error occurred. *Perry*, 150 Idaho at 227-28, 245 P.3d at 979-80 (restating the *Chapman* harmless error test). If the appellant meets that burden, the State then has the burden of demonstrating to the appellate court beyond a reasonable doubt that the constitutional violation did not contribute to the jury's verdict. *Perry*, 150 Idaho at 227-28, 245 P.3d at 979-80 (restating the *Chapman* harmless error test).

We do not have the authority to modify the standard of review of the denial of a motion for mistrial. Most significantly, the Idaho Supreme Court has used the current standard of review after issuing its opinion in *Perry*. *State v. Ellington*, 151 Idaho 53, 68, 253 P.3d 727, 742 (2011). Moreover, we are not inclined to agree with Calvillo that juror exposure to an allegedly prejudicial statement during voir dire is a structural defect.

---

[1] *Chapman v. California,* 386 U.S. 18 (1967).

4

**B.** **Denial of the Motion For Mistrial Was Not Error**

Having reaffirmed the standard of review, we next consider the statements' continuing impact on the trial and analyze whether the statements that precipitated the motion for mistrial constitute reversible error in the context of the full record.

During voir dire, the following exchange occurred:

COURT: At this stage, I will ask the panel some preliminary questions. Later, the attorneys for all the parties will ask their questions.

First, you have heard the charges made in the indictment against the defendant. Other than what I have told you, do any of you know anything about this case either through your own personal knowledge, by discussion with anyone else, or from radio, television, or newspapers? If so, please raise your juror card now.

. . . .

All right. Thank you.

Juror Number 65 . . . what is your source of information of this case?

JUROR 65: I worked at the jail as a nurse while Mr. Calvillo was incarcerated.

COURT: Then, [Juror 65], you are excused with the thanks of the Court.

Juror Number 70 . . . what is your source of information of this case?

JUROR 70: I had a professional relationship with the defendant.

COURT: Okay. And how long ago might that have been?

JUROR 70: It was about 2008 until about the time he went missing.

COURT: Okay. And that was--so have you had any dealings with the defendant since 2008?

JUROR 70: No, sir.

COURT: Okay. And do you have--this is just a yes or no question. Do you have any information relative to this case?

JUROR 70: No.

COURT: Do you believe that you can be a fair and impartial juror?

JUROR 70: You know, I knew the defendant.

COURT: Hold on. Hold on. It just calls for a yes or no.

JUROR 70: No, sir.

COURT: All right. Then, [Juror 70], you are excused with the thanks of the Court.

On appeal, Calvillo asserts that he was deprived of a fair trial by an impartial jury based on jurors' comments that he was incarcerated and went missing. Calvillo argues that his motion for mistrial should have been granted because Jurors 65 and 70 biased the entire panel of prospective jurors against him.

The State asserts that Calvillo failed to meet his initial burden of showing that the jurors' statements biased the jury, and thus the district court did not err in denying the motion for mistrial. We agree.

Any potential harm from the jurors' statements does not rise to the level that would require a mistrial. There is no record-based evidence that suggests the statements had more than a passing inconsequential effect on the remaining pool of potential jurors. As voir dire commenced, and before Jurors 65 and 70 made the statements at issue in this case, the court issued the following instruction:

> [N]one of the statements, opinions, or beliefs expressed by any of you prospective jurors are evidence in this case, and you should not permit any such statements, opinions, or beliefs to influence your decision if you are selected to be a juror in this case.

The commenting jurors were excused. Each eventual trial juror promised the court that they would decide Calvillo's case based solely upon the evidence presented at trial. Importantly, the court immediately excused Jurors 65 and 70 from jury service after they made the statements in order to prevent further possible contamination of the jury.

Furthermore, the jury asked the court just two questions after presentation of evidence as the trial concluded; neither question involved the topics of Calvillo's prior incarceration or the period of time that he went missing. None of the empaneled jurors asked any follow-up questions pertaining to Calvillo's incarceration or about the fact that he went missing, nor did any juror make any other references to or statements about Calvillo being incarcerated or going missing. Finally, the jury acquitted Calvillo of one count of lewd conduct with a minor, which cuts directly against Calvillo's contention that the jurors' statements biased the jury against him and that his right to trial by an impartial jury was violated.

Moreover, with regard to the incarceration comment, we have previously held that such a comment is not necessarily "devastating." *State v. Hill*, 140 Idaho 625, 631, 97 P.3d, 1014, 1020 (Ct. App. 2004). While the statement in *Hill* was made in the course of presentation of evidence and was followed by an instruction to disregard, we noted that a reasonably knowledgeable juror would have surmised that Hill had been incarcerated. *Id*. Aside from surmising incarceration, here, the victim testified that the police came to the house and took Calvillo away after the abuse was reported. The incarceration remark was neither devastating nor had a continuing impact on the trial.

6

With regard to the statement made by Juror 70, that statement was not couched in the context of the instant trial and had no inherent connection to criminality or incarceration. Calvillo could have gone missing for any number of innocuous reasons, none of them having anything to do with a guilty conscience or absconding from trial. Furthermore, immediately after Juror 70 stated that he knew Calvillo until Calvillo "went missing," the court asked if Juror 70 had any information relative to this case. Juror 70 responded, "No." The remaining jurors reasonably could have inferred from this exchange that Calvillo's disappearance was not, in fact, related to this case. Finally, at the time the statement was made, none of the jurors knew of the previous trial on these same charges. Thus, the jurors would not have connected the statement that Calvillo went missing with facts unknown to them at that time: (1) that Calvillo had absconded from a previous trial on the same charges, (2) that he was ultimately convicted and returned to the United States for sentencing, and (3) that he was now being retried on the same charges.

Ultimately, the record does not support Calvillo's claim that the jury was biased by the two statements made during voir dire. Considering the trial as a whole, we hold these statements were not so prejudicial as to require reversal. Accordingly, the district court did not err in denying Calvillo's motion for mistrial.

### III.
### CONCLUSION

We are not at liberty to modify the standard of review. Applying the well-established standard in this case, we conclude Calvillo has failed to show reversible error based on the jurors' statements. Therefore, Calvillo's judgment of conviction for one count of sexual abuse of a child and six counts of lewd conduct with a minor is affirmed.

Judge GUTIERREZ and Judge Pro Tem WALTERS **CONCUR**.